THE STATE, Respondent, v. Ross, Appellant.

1. Where three persons are jointly indicted for murder, one as principal in the first degree, the others as aiders and abettors, and the one indicted as principal in the first degree is put upon his trial first and acquitted, the record of his acquittal is inadmissible in evidence in favor of the others.

2. Where several persons are jointly indicted for murder, one as principal in the first degree, the others as aiders and abettors, each defendant may be tried as principal either in the first or second degree.

3. Where a person is indicted for murder in the first degree, and is put upon his trial and convicted of murder in the second degree, and a new trial is ordered at his instance, he can not legally be put upon his trial again upon the charge of murder in the first degree; he can be put upon his trial only upon the charge of murder in the second degree. (SCOTT, Judge, dissenting.)

4. To authorize the giving of instructions, there must be facts in evidence upon which to base them; nor should they contain comments upon the testimony.

5. In the case of a joint indictment of several for the joint commission of a crime, when once the conspiracy or combination is established, the act or declaration of one conspirator in the prosecution of the common enterprise is admissible in evidence against all. Acts or delarations of one, made after the common enterprise is ended, whether by accomplishment or abandonment, are not admissible in evidence against the others.

6. The rule requiring *prima facie* proof of the conspiracy or combination to be first made before the act or declarations of one conspirator or accomplice can be admitted against the others is not inflexible; the judge may, in his discretion, under peculiar and urgent circumstances, permit such acts and declarations to be introduced before sufficient proof is given to establish the conspiracy or combination.

7. The ninth section of the first article of the act concerning jurors (R. C. 1855, p. 910), which provides that "no exception to a juror on account of his citizenship, nonresidence, state, or age, *or other disability*, shall be allowed after the jury are sworn," does not apply to the objection that the juror had formed or delivered an opinion on the issue or any material fact to be tried; if the latter objection be made on a motion for a new trial, the court must entertain it.

*Appeal from Madison Circuit Court.*

Sullivan Phillips, Presley Phillips and John L. Ross were indicted for the murder of Robert G. Watson. The indictment contained only one count charging murder in the first degree, Sullivan Phillips being indicted as principal in the first degree, the others as aiders and abettors. Sullivan Phillips was put upon his trial first and acquitted. Presley Phillips and Ross were then put upon their trial and found guilty of murder in the second degree. This verdict was in the following form: "We, the jury, find the defendants, Presley Phillips and John L. Ross, guilty as principals in the second degree of murder in the second degree, and assess their punishment each at ten years' imprisonment in the peni tentiary." They appealed to the supreme court and the judgment against them was reversed. (See State v. Phillips and Ross, 24 Mo. 475.) There was a severance as to the defendants. Ross filed a plea setting up the former implied acquittal of murder in the first degree as a bar to any further prosecution for that grade of offence. The State demurred to this plea. The demurrer was sustained, and the defendant was put upon his trial upon the whole indictment. On the trial the defendant offered in evidence, as on the former trial of Phillips and Ross, the record of the acquittal of Sullivan Phillips, the actual perpetrator of the homicide. The court refused to admit the record.

The instructions given and refused are very voluminous. It is deemed unnecessary to set forth those that are not noticed in the opinions below. The court, among other instructions asked by the defendant, refused the following: "4. The jury are instructed that in determining whether there was or was not any conspiracy or common design of any sort between John L. Ross, Presley Phillips and Sullivan Phillips, or either of them, the jury have no right to consider any declarations which Presley may have made to Shelton on Monday, or to Bishop or Shultz on Wednesday, in the absence of John L. Ross; nor have the jury a right, in determining whether

there was or was not such conspiracy or common design, to consider any declarations which may have been made by Presley Phillips to Shultz on the gallery, or to his slave, unless the jury are satisfied from the evidence that these two latter declarations of Presley Phillips were in the presence and hearing of John L. Ross. The jury can not consider any declarations of Presley Phillips made in the absence of John L. Ross in order to determine whether such conspiracy or common design existed. If the jury shall be satisfied from the other evidence in the cause that such conspiracy or common design existed before the act of killing, then and not till then do these declarations of Presley Phillips become evidence against John L. Ross. 5. If the jury shall find from the evidence in the cause that Sullivan Phillips killed Robert G. Watson, and that he did the act upon his own independent motion, and not in the execution of any conspiracy or common design to which John L. Ross was a party, they ought to acquit the defendant John L. Ross, no matter whether the act of Sullivan Phillips in killing said Watson was justifiable or not."

The court gave the following instructions at its own instance : " 5. If the jury believe that there was no common design between Presley Phillips, Sullivan Phillips and John L. Ross to kill Robert G. Watson nor to do him any great personal injury, and that there was no conspiracy or confederacy between them to go through the lands or enclosure of the deceased [?] of any or all opposition that might be made, and that Sullivan Phillips shot and killed Robert G. Watson, and that John L. Ross did not aid and assist or abet Sullivan Phillips to kill Robert G. Watson, and did not intentionally encourage Sullivan Phillips, by his presence, acts or declarations, to commit the act, then the jury ought to acquit John L. Ross of the charge of murder. Every person is presumed to intend the necessary consequences of his acts, but such presumption may be rebutted by other evidence. 6. By the term ' common design' is meant unity of intention between two or more persons to do an unlawful act, and may be es-

tablished by circumstances or by direct evidence of an express agreement. 15. If the jury believe from the evidence in this cause that there was no common design between Presley Phillips, Sullivan Phillips and John L. Ross (at the time Sullivan Phillips shot and killed Watson) to go through the enclosure of Watson against all opposition, and that there was no common design between them to kill Watson, nor to do him any great personal injury, and that Sullivan Phillips shot and killed Watson, and that there was no common design between them to wilfully and maliciously pull down the fences of Watson, then John L. Ross is not to be affected by any conversation Presley Phillips may have had with Shelton, Bishop, or any other person, in the absence of John L. Ross; and under these circumstances the jury are to discard it from their consideration in determining the guilt or innocence of the accused; but it is not material that such common design existed at the time said conversations took place. If such common design existed at the time Watson was killed, the jury ought not to discard said conversations with Bishop and Shelton from their consideration in determining the guilt or innocence of the accused."

The court gave no instructions as to the law of murder in the second degree. The jury found the following verdict: "We, the jury, find the defendant John L. Ross not guilty of murder in the first degree in manner and form as he stands charged in the indictment; but we do find him, John L. Ross, guilty of murder in the second degree in manner and form as he stands charged in the indictment, and we assess his punishment to ten years' imprisonment in the penitentiary."

Among the reasons for a new trial was the following: that one of the jurors "prejudged the case, and concealed his opinions and prejudices from the court and defendant, and answered untruly to the court the questions put to him by the court when examined as to his qualifications as a juror; and because this prejudgment was unknown to defendant until after verdict, as may be more fully seen by reference to

the affidavits of," &c. The action of the court in respect to this ground for a new trial is sufficiently set forth in the opinion of the court.

*U. & J. Wright, Lackland, Cline & Jamison,* for appellant.

I. The court erred in sustaining the demurrer to the defendant's plea in bar. If the record did not show that defendant had been acquitted as alleged in the plea, the only proper mode of revising that question was by replication of *nul tiel record.*

II. The record of the acquittal of Sullivan was competent evidence to go to the jury for what it is worth. It establishes to all the world, as well strangers as parties and privies, that Sullivan Phillips was not guilty of any offence, and consequently that Ross could not be guilty as a principal in the second degree of a murder or other offence committed by Sullivan Phillips; which was the very theory and hypothesis of the prosecution. The record was not conclusive, because under the indictment the State might have established the guilt upon some other theory or hypothesis. The acquittal of Sullivan Phillips conclusively negatives the hypothesis that he committed any offence; consequently neither defendant nor any one else can be guilty as an aider and abettor of Sullivan Phillips. (State v. Chilton, 2 Dev. 54.)

III. The court erred in permitting the witnesses Shelton, Bishop and Shultz to state in evidence what was said to them by Presley Phillips, on Monday and Wednesday, in the absence of Ross.

IV. The court erred in refusing to instruct the jury, as asked by defendant, that the declarations of Presley Phillips, as testified to by Shelton, Shultz and Bishop, made in the absence of defendant Ross, were incompetent to prove that he was a party to any conspiracy or common design. The court gave no instruction covering this principle. (See 1 Greenl. Ev. § 233, 110, 111; United States v. Gooding, 12 Wheat. 460; 1 Moody C. C. 347; 6 Q. B. 126; 1 Stark. 82; 7 Mo. 414; Colly. on Part. § 776; 10 Johns. 66; 5 Pick.

414; 7 Wend. 216; 6 Pick. 464; 14 Pick. 61; 6 N. H. 82; 9 Metc. 457; 14 Johns. 215; 2 Hall, 351.)

V. By the verdict of the jury on the former trial the defendant was acquitted of murder in the first degree, and it was error in the court to put him on trial a second time for that offence, and all the instructions given by the court upon the subject of murder in the first degree were improper and illegal. The legal effect of the first verdict was to acquit defendant of murder in the first degree, and the reversal of the judgment based upon that verdict in nowise impairs the validity of the acquittal of murder in the first degree. (Jones & Jones v. State, 11 Texas, 183; Campbell v. State, 9 Yerg. 333; Slaughter v. State, 6 Hump. 410; People v. Gilmore, 4 Cal. 376; State v. Hornsby, 8 Rob. 588; State v. Desmond, 5 Louis. Ann. 399; State v. Chandler, 5 Louis. Ann. 491; Hunt v. State, 25 Mo. 378; Brennan v. People, 15 Ill. 517. See 1 Blackf. 37; 3 Hill, 239; 1 Ired. 424; also Dickey v. Commonwealth, 17 Penn. 126; Esmond v. State, 1 Swan, 14; 7 Conn. 56; 1 Greene, 362; 5 Port. 523; 17 Wend. 386; 2 Harring. 543; 2 Hawks, 98; 6 Term, 638; 14 Ohio, 295; 2 Yerg. 24.)

VI. The fifth instruction is erroneous. The latter part of this instruction, though abstractly correct, was inapplicable to the facts. It was calculated to mislead the jury. The effect of it was the same as a commentary on the weight of the evidence. (See State v. Kempf, 2 Mo. 429; State v. Phillips and Ross, 24 Mo. 475; Hays v. Bell, 16 Mo. 496; Oliver v. State, 7 Ala. 597; McDermot v. Burnum, 19 Mo. 204; Glover v. Duhle, 19 Mo. 710; 3 Bibb, 482; Hollister v. Johnson, 4 Wend. 639; Mercien v. Mack, 10 Wend. 461; Haine v. Davy, 4 Ad. & El. 899; 17 Mo. 142; 1 Mo. 618; 8 Mo. 268.) The seventh, eighth, ninth, tenth, twelfth, thirteenth and fourteenth instructions are all wrong. The fifteenth instruction is wrong because it refers to the jury the question whether the declarations of Presley Phillips were competent evidence. (See 6 Mo. 267, 279; 15 Mo. 62; 11 Mo. 230.) Where, from the absence of proper instructions,

the jury fall into error, a new trial will be granted. (1 Wash. C. C. 201.) The jury did not err in favor of the defendant, because he had been acquitted of murder in the first degree. The opinion of the court in the case of State v. Phillips and Ross shows beyond all doubt that there is no murder in the second degree in the case. (24 Mo. 489.) There is no legal evidence to support a verdict of murder in the second degree. (See State v. Packwood, 26 Mo. 363; State v. Gresser, 19 Mo. 247.)

VII. The court erred in deciding that the statute prohibited an inquiry into the question whether defendant was defrauded out of a fair trial by the conduct of the juror. The question raised by the tenth reason for a new trial does not involve the right of challenge at all. (See generally 9 Denio, 203; 1 Bay, 373; 19 Ohio, 198; 3 Scam. 412; 2 Salk. 645; R. C. 1855, p. 1191, § 15, p. 910, § 289; 18 Mo. 428.)

*Mauro*, (circuit attorney,) and *J. W. Noell*, for respondent.

I. There was no error in putting defendant again on trial for murder as if no verdict had been rendered. The constitutional provision which exempts a party from being put twice in jeopardy is a personal right and privilege. It has no application to the case of an erroneous judgment which the accused at his own instance causes to be set aside. The defendant has not been injured. If the former verdict is still in force so far as it acquitted the defendant of murder in the first degree, still, the verdict in this case not being for murder in the first degree, the accused has no ground for complaint.

II. There is no error in the overruling of that point in the motion for a new trial which involves the propriety and legality of the verdict for murder in the second degree. It was a proper case of murder in the second degree as to Ross. The court refused to give any instructions upon the hypothesis of murder in the second degree. The defendant asked no instruction to negative that hypothesis. (See State v. Green, 13 Mo. 383.)

III. There is no such proof of misconduct on the part of the jury as will warrant the interference of this court with the ruling of the circuit court on this point. (See 1 Robin. 735 ; 1 Leigh, 617.) There was no error in the refusal of defendant's instructions, nor in those given by the court.

EWING, Judge, delivered the opinion of the court.

Among the exceptions to the ruling of the court below was excluding the record of the acquittal of Sullivan Phillips. It is conceded that the record was not conclusive evidence of defendant's innocence, but that it conclusively negatives the hypothesis as against Sullivan Phillips that he committed any offence, and consequently that defendant and no one else can be guilty as his aider or abettor.

In the State v. Phillips and Ross, 24 Mo. 480, one of the points made was, that the acquittal of Sullivan Phillips, the principal in the first degree, operated in law the discharge of the defendants from the indictment, and the court ought to have discharged them on motion. On the trial the question was raised, first, by a motion for a discharge before any evidence was offered, and afterwards by offering the record of the acquittal of Sullivan Phillips as evidence in chief. It was held that as against the defendants in that case, Phillips and Ross, the question of the guilt or innocence of Sullivan Phillips was still open ; that his acquittal did not operate their discharge, and that, though Sullivan Phillips was the actual perpetrator of the homicide, the record of his acquittal would be inadmissible in evidence in favor of Phillips and Ross, the defendants.

If it be true, as assumed by counsel, that, Sullivan Phillips having been acquitted, the defendant Ross can not be his aider and abettor, still, admitting the conclusion to be correct, it can not avail the defendant. To give him any benefit of such a hypothesis, it must also be true that he could not under the law be put upon his trial as a principal in the first degree. This the argument does not and could not

assume. The proposition is not thus broad, and does not embrace the conditions from which such a conclusion could possibly be drawn. Unless the proposition affirmed that, as between Sullivan Phillips and the defendant, the relation of principal in the first and second degree, or principal and aider and abettor was fixed, and that in their trial under the indictment this relation must be observed, as a matter of law, then and then only could the acquittal of Sullivan Phillips enure to the benefit of the defendant, and the record of acquittal be admitted as evidence in his favor.

The position of counsel assumes that Sullivan Phillips was the principal in the first degree because he is so charged; and the assumption necessarily involves the conclusion sought, that of the dependent or accessorial guilt, if guilty at all, of the defendant. It is true he is so charged in the indictment, but he may have been tried as principal in the first or second degree, and his acquittal is equally conclusive in his favor as to both aspects of the charge. It is quite immaterial that on the trial the theory of the prosecution may have been that he was guilty, if guilty at all, as principal in the first degree. The theory of the indictment under the law is, that the parties to it are all principals and all aiders and abettors. Though jointly charged so as to show nominally a dependent offence as to two of them, yet their relative positions in point of law are wholly immaterial. The one charged as principal in the first degree may be convicted as principal in the second degree, and *vice versa*.

The case of the State v. Chilton, 2 Dev. 57, cited by counsel, is inapplicable. There the prisoner was indicted as an accessory before the fact to a murder of which the principal had been previously convicted. On the trial of the accessory, the record of the conviction of the principal was offered by the State and admitted against the objection of the prisoner. It was held to be admissible for the purpose of proving the conviction of the principal, of which it was conclusive, and was *prima facie* evidence of the guilt of the accessory. It was read for the purpose of establishing the fact that a

murder had been committed by the principal as a prerequisite to the trial of the accessory; for, without this proof of the murder, the prisoner could not have been tried as accessory. The offences were different; the principal was guilty of one offence and the accessory of another; and the record of the conviction of the former was no proof of the guilt of the latter, and was not read for that purpose. It is obvious there is no analogy between the two cases. In the one case, the record was admitted to prove a fact without the previous proof [of] which the accessory could not have been tried; in the other, it was offered as evidence of a fact which, if proved, could not have enured to the benefit of the defendant. There was no error, therefore, in excluding it.

Another question presented by the record is whether the appellant, after having been put upon his trial for murder and found guilty of murder in the second degree, and a new trial granted, could have been legally tried again for the higher grade of homicide.

For the appellant, it is maintained that the legal effect of such verdict is a bar to any further prosecution for murder in the first degree, and that the reversal of the judgment upon that verdict in nowise impairs the validity of the acquittal of the higher offence. On the part of the State, it is urged that the constitutional provision, which exempts a party from being put twice in jeopardy, is a personal right or privilege, and that it has no application in the case of an erroneous judgment which the accused at his own instance causes to be set aside; that, if the former verdict is still in force so far as it acquitted the appellant of murder in the first degree, still, the verdict in this case being for a lower grade of offence, he is not injured, and has no cause of complaint.

In this case the verdict is for murder in the second degree, and it expressly finds not guilty of murder in the first degree. But without any such express finding this would have been the effect of the verdict. (State v. Ball, 28 Mo. 327.) In that case it was held that a verdict of murder in the se-

cond degree, by necessary implication, finds not guilty of the higher offence, and that a conviction of murder in the second degree necessarily acquits of murder in the first degree. The only question therefore is whether, the appellant having obtained a new trial, the whole case should have been re-opened and a retrial had upon the whole indictment.

Numerous authorities have been cited from various states, which, with two or three exceptions, concur in the doctrine that the effect of a new trial in such cases is only to subject the party to a trial for the offence of which he has been convicted; and the verdict of acquittal remains unaffected. The same principle is also recognized by the English authorities to which we have been referred.

In Lithon v. The Commonwealth, 2 Virginia Cases, 311, the indictment contained five counts, the first four charging embezzlement, and the fifth larceny. The defendant was tried and convicted under the last count. Upon a petition for a writ of error to the general court, it was held that where there are several counts in an indictment, and on one of them the prisoner was convicted and acquitted of the rest, and on a writ of error obtained by him the judgment and verdict are set aside and a new trial awarded, he can only be tried again on the count on which he was convicted and not on the others of which he had been acquitted. In delivering the opinion of the court, the judge observes that the authorities, English and American, prove that, in an action against several in form *ex delicto*, if some be acquitted and a verdict against others, such verdict may, upon the motion of the defendants against whom it was rendered, be set aside as to them and stand good as to those who are acquitted. This, he remarks, proves that the verdict is not that strictly entire thing which has been supposed; that no difference in principle exists between its being severed as to parties and severed as to counts. Each count is a separate indictment, and in legal contemplation is an indictment for a separate offence. To the same effect is the State v. Kettle et al., 2 Tyler, 472. The same doctrine was recognized and

applied in Campbell v. The State, 9 Yerg. 335, a case simi-
lar to that cited from Virginia. The defendant in that case
was indicted in several counts for larceny, and being con-
victed upon one and acquitted as to the others, he obtained
a new trial, and being again put upon his trial on the whole
indictment. This was held to be erroneous. In delivering
the opinion of the court, Judge Green maintains the right of
the defendant to a new trial in such cases, unembarrassed by
the counts as to which there was an acquittal, and without
reopening the whole indictment, upon the well settled prin-
ciples of criminal pleading and practice ; upon the principle
that every count in an indictment contains a charge of a dis-
tinct offence, and that, by the known analogies between the
joinder of different offenders and different offences against
the same individual, there may be a verdict of guilty upon
some counts and not guilty upon others ; that it is well set-
tled, where several defendants are tried at the same time and
some acquitted and others convicted, a new trial may be
granted as to those convicted without setting aside the entire
verdict. The conclusion deduced from these principles and
the rules growing out of them is, that, where there are seve-
ral counts and a conviction upon some and an acquittal as to
others, a new trial does not subject the party asking it to a
trial upon the counts as to which he was found not guilty.
Upon this point the judge remarks that " it is not necessary
to determine how far a party could be held to even an ex-
press waiver of the benefit of a verdict of acquittal. It is
enough that in this case he has not done so. He moved for
a new trial. We are not to suppose his application was more
extensive than his necessities. As he had been acquitted
upon two counts, he could have no motive to ask for another
trial except upon the one on which he was found guilty, and
we are not to understand his application as going further."
It is further observed, that, although in granting a new trial
the verdict was set aside, and that this improperly revived
the proceedings upon those counts on which the defendant

was acquitted, it was error to try the defendant a second time upon the counts as to which he was acquitted.

The case of the People v. Gilmore, 4 Cal. 376, is an authority strongly in point. The defendant was indicted for murder and was convicted of manslaughter. The verdict was set aside on the prisoner's motion, and a new trial awarded. On the second arraignment of the prisoner upon the indictment, he pleaded a former acquittal. Under these circumstances, it was held that to a second trial for murder, upon the same or a different indictment, the defendant could plead the former conviction of manslaughter as an acquittal of the crime of murder, and that he could be again tried and convicted of manslaughter under the same indictment. See also The State v. Hornsby, 5 Louis. Ann. 588, where the same point is decided, the court holding that the verdict of manslaughter was a virtual acquittal of the charge of murder, for which grade of homicide the accused could not have been again constitutionally put on his trial under the first indictment or a second. In Slaughter v. The State, 6 Humph. 413, the doctrine of Campbell v. The State was reaffirmed as to the effect of the first verdict upon a second trial. But it is well to refer to it more particularly as an authority, not only upon the point we are considering, but also for its sound reasoning upon a question growing out of that decision. In this case the defendant was indicted for murder in the first degree, and he was convicted of manslaughter, but found not guilty of murder as charged in the indictment. A new trial being granted and the verdict set aside, the defendant filed a plea of *autre fois acquit*, to which there was a replication. Defendant rejoined ; and it was determined that he was not fully acquitted of the felony. There being a trial, he was again convicted of manslaughter. The indictment being for murder in the first degree, it contained by operation of law a charge of every grade of a felonious homicide. The question was whether the defendant should have been put upon his trial a second time upon the indictment. In answering

State v. Ross.

the objection that the defendant could not properly be tried again for manslaughter on the indictment, because it contained a charge of murder and the jury might have found him guilty of murder, Judge Green, in delivering the opinion, remarks that it would be just as easy for the court, on an indictment for murder, to direct the jury to confine their inquiry to the charge of manslaughter as to direct them to confine their inquiry to one count of an indictment containing several counts. He further remarks that the order granting a new trial may have had the effect of setting aside the entire verdict, but, as the verdict of acquittal of murder protected the defendant by the constitution from any subsequent trial for that offence, the court, at the subsequent trial, having the whole record before him, was bound to see that he was protected, and to regard so much of the order setting aside the verdict as a nullity. See also Esmon v. The State, 1 Swan, 15.

In the case of Jones and Jones v. The State, 13 Texas, 184, the same point was decided upon a full review of the adjudged cases, and, in the opinion of the court, delivered by Judge Lipscomb, he states as the result of his investigation, that, both on principle and authority of adjudged cases, the appellants, after having been acquitted of murder in the first degree and found guilty of murder in the second degree, could not be legally tried and convicted of murder in the first degree, and that the verdict so finding them can not stand as the basis of a judgment and execution thereon. To the same effect is Hunt v. The State of Mississippi, 25 Miss. 381, which was an indictment for murder and a conviction of manslaughter in the third degree. Upon a writ of error for refusing a new trial, the court, in a well considered opinion by Judge Fisher, decide that in such a case the jury, in contemplation of law, render two verdicts, the one acquitting the accused of the higher crime charged, the other finding him guilty of an inferior crime; that the verdict in the defendant's favor is unaffected by a reversal of the judgment, and that neither he nor the State could ask a revision of such

4—VOL. XXIX.

a judgment, and that, having no power to revise it, there was no authority in the court to reverse or annul it. In Brennan et al. v. The People, 15 Ill. 517, the same doctrine is recognized, and the court placed the doctrine upon the same basis on which the cases already cited have put it. This case, like those, is strongly in point.

To these authorities I will add what is said by Mr. Bishop in his Commentaries on Criminal Law. In speaking of a party waiving his constitutional rights, he remarks that it is not construed by the court as extending beyond the exact matter concerning which the relief is sought. If, therefore, the verdict which finds a prisoner guilty of a part of the charge against him finds him not guilty of another part, as, for example, guilty on one count of the indictment and not guilty on another count; or, where there is but one count, guilty of manslaughter and not guilty of murder, and a new trial is granted him, he can not be convicted on the second trial of the matter of which he was acquitted on the first. (1 Bishop C. L. § 676.)

In the State v. Ball, 27 Mo. 327, this court decided that a conviction of murder in the second degree necessarily acquits of murder in the first degree, and the verdict in the latter case, so long as it stands, unquestionably bars any prosecution for the first named offence. If, in such case, the prosecution would be barred because a party could not be put twice in jeopardy, the bar would not be more effectual if he had been tried and acquitted of murder in the first degree, and there had been no conviction at all of an inferior degree of homicide. But in the former case, it is said, he waives his constitutional right by asking and obtaining a new trial; and he waives it, not I suppose because he intends or desires another trial for the offence of which he was acquitted, but, it is urged, because this must be the necessary effect of it. Of what avail, then, is the constitutional protection, which is thus controlled by a technical notion of the entirety of a verdict, and leaves the accused the alternative of either asking relief from a violation of law only on condition of being

State v. Ross.

tried a second time for an offence of which he has been declared by a jury of the country guiltless, or of submitting to the consequences of the error, whatever they may be, without redress. If he has the error corrected, he waives his claim to the rights which the law of the land promises him. If he has the error, by which he has been wrongfully convicted, corrected, he is only undoing what has been done in violation of his rights and the law of the land. He is thus necessarily once in jeopardy and convicted by reason of errors against which he protested, and in remedying which he must be subjected to a second trial. But not only so, the second trial, to which he is thus necessitated, if had at all, can only be obtained by submitting to a trial not only on the charge on which he was erroneously convicted, but also upon an offence of which he was found not guilty.

Opposed to the array of concurrent authorities already cited, we have been referred to but two or three cases which recognize a different doctrine. In the case of Morris v. The State, 1 Blackf. 37, the defendant was indicted in two counts, the first charging burglary, the second larceny. He was tried and acquitted of the burglary and found guilty of the larceny. A new trial being granted on his motion, there was a similar verdict. This point was disposed of by a single remark, the judge observing, that, independently of the general rule that he who desires a new trial must receive it as to the whole case, it can not be supposed, that, where there are two charges in an indictment, that an acquittal as to one can possibly vitiate the verdict of guilty as to the other. It was objected that the second trial for the burglary was improper, and that, although it was productive of no direct inconvenience to the plaintiff, it may have had an improper influence against him on the charge of larceny. The judgment was reversed, however, on a different ground. In 2 Leading Criminal Cases, 502, the authors, in commenting on Campbell v. The State, before cited, observe that the direction in the State v. Morris, "that he who desires a new trial must receive it as to the whole case," can hardly shake the

reasonable rule laid down in the former, which they remark is well supported by authority as well as principle. The next is the case of the State v. Com'rs Crossroads, 3 Hill S. C. 241, in which it was held that where on an indictment containing two counts the defendants were convicted on but one, on a new trial, ordered at their instance, they may be tried again on both counts. From the decision on this point Judge Gantt dissented, holding that the verdict of guilty on the second count was an acquittal on the first count, and that the new trial ordered at defendant's instance involved the subject matter of the charge in the count on which he was convicted only. In the State v. Stanton, 1 Iredell, ——, the question was not before the court and was not necessary to the determination of the case; and the remark of the judge on that point can not be considered as an authority.

Wharton, in his Criminal Law, recognizes a distinction on this point between cases where the indictment contains several counts, on some of which there is an acquittal and on others a conviction, and where there is but one count which includes a greater and less charge; maintaining that, in the latter, if there is a conviction of the inferior degree of offence and a new trial, the new trial will open the whole case, but that such would not be the effect in the former class of cases. The only cases cited by him in support of this distinction is the case of the State v. Morris, before referred to, and a remark of Mr. Justice Grier, in United States v. Harding et al., Wallace, jr. 147. In this case, pending a motion for a new trial, the judge cautions the prisoners, that, if a new trial is awarded, another jury, instead of acquitting them, might find them guilty of the whole indictment, and thus their lives become forfeit to the law.

Our conclusion, then, on this point is that the effect of the first verdict being an acquittal of the appellant of murder in the first degree, he could not legally have been put upon his trial again on that charge upon the reversal of the judgment, and all the instructions given upon the hypothesis of murder in the first degree, of course, were improper.

It is insisted by the appellant that the instruction number five, given by the court at its own instance, is erroneous. The first part of this instruction embraces every hypothesis upon which the jury could base their finding and all the conditions which the theory of the case would seem to imply, and then concludes thus: "Every person is presumed to intend the necessary consequences of his own acts, but such presumption may be rebutted by other evidence." This clause of the instruction assumes that certain consequences necessarily followed the acts of the defendant, and these consequences the law presumes were intended by him. What particular acts were meant does not appear, and on account of the vagueness of the instruction, even if it had been applicable to the case, it was improper as being calculated to mislead. But there was no ground for such an assumption in this case. Unless the acts of the appellant were such as to have necessarily produced results which the law would presume he intended, the instruction was wrong. Could it be affirmed of any act done or declarations made by the appellant that it was necessarily followed by consequences which, as a matter of law, he was presumed to intend? Was the shooting of Watson by Sullivan Phillips, for instance, the necessary consequence of the words addressed by the appellant to another son of Presley Phillips, (who is not charged in the indictment as an aider or abettor,) to "give his father the gun"? Or was the death of Watson the necessary consequence of the presence of the appellant at the time of the commission of the homicide, or of any act done by him on that occasion? Whether Ross was a party to any common design to take the life of Watson, or to do him great bodily harm, or to go through his field, are facts which are to be found by the jury, and which were very properly left to the jury in the first part of the instruction under consideration. The last clause of the instruction was also in the nature of a commentary upon the evidence and was calculated to prejudice.

Another point is that the court below erred in refusing to

give instruction number five [four ?] asked by the appellant. It is well settled that in cases of conspiracy, or other crime perpetrated by several persons, when once the conspiracy or combination is established, the act or declaration of one conspirator in the prosecution of the enterprise is considered the act of all and is evidence against all. Each is deemed to assent to or command what is done by any other in furtherance of the common object. (1 Greenl. Ev. § 233.) After the common enterprise is ended, whether by accomplishment or abandonment is not material, no one is permitted by any subsequent act or declaration of his own to affect the others. The declarations of a conspirator or accomplice are receivable against his fellows only when they are either in themselves acts or accompany and explain acts for which the others are responsible, but not when they are in the nature of narratives, descriptions or subsequent confessions. (Ib.) Instruction number five was intended to embody this principle, and is substantially correct. The court, on its own motion, however, gave an instruction, number fifteen, which presents this point to the jury, though not so clearly as could be desired. In both instructions they are told that they are not to consider the declarations of Presley Phillips to Shelton, Bishop, or any other person, to prove a common design between the appellant and the Phillips; that this must be proved by other evidence; and, upon the hypothesis of such common design being thus established, then these are to be considered in determining the guilt or innocence of the accused. But it is insisted by the appellant's counsel that the 15th instruction is wrong, because it refers to the jury the question of the competency of Presley Phillips' declarations as testified to by Shelton and others; that this was a question for the court, not the jury. If this instruction is liable to that objection, so is the corresponding one, we think, asked by the defendant. But we do not deem the objection to be well taken. It is true, instruction fifteen does not say in so many words that the common design must be established by evidence other than the declarations alluded to, but it does

so, we think, by a necessary inference so obvious that the jury could not have been misled on that point. The jury are told that if they believe from the evidence that there was no common design between Ross and the Phillips, then Ross is not to be affected by any declarations of Presley Phillips. The other instruction tells them the same thing, though in different phraseology.

It is true that a foundation must first be laid by proof sufficient, in the opinion of the judge, to establish *prima facie* the fact of conspiracy between the parties, or proper to be laid before the jury as tending to establish such fact, before the acts and declarations of one of a company of conspirators can be admitted in regard to the common design as affecting his fellows. (1 Greenl. Ev. § 111.) But the rule is not inflexible. Such acts and declarations are sometimes admitted for the sake of convenience before sufficient proof is given of the conspiracy. This rests in the discretion of the judge, but is not to be permitted except under particular and urgent circumstances. (Ib.) The general rule as to the order in which testimony in such cases is to be adduced may be varied from; the judge sometimes permitting evidence to be given the relevancy of which is not apparent at the time when it is offered, but which the prosecutor shows will be rendered so by other evidence which he undertakes to produce. (3 Greenl. § 92.)

One of the grounds assigned for a new trial, and the only one that we deem it necessary to notice, is that one of the jurors who tried the appellant had prejudged the case; that the answers given by him to the usual questions propounded to jurors were untrue, and that those facts were unknown to the appellant until after the verdict in the cause. The affidavits of sundry persons were filed in support of the motion, all agreeing as to the declarations made by the juror, previous to the trial respecting the defendant and the Phillips. A counter affidavit of the juror was filed denying the statements of the witnesses, and alleging that at the time he was sworn as a juror he had not formed or expressed an

opinion respecting the guilt or innocence of the defendant, and that he had no bias or prejudice against him. Witnesses were introduced by the State and appellant respectively as to the general character of the juror and the other affiants. The court, in overruling the motion for a new trial, decided that, as to this ground, the statute of this state precluded any inquiry into the alleged prejudgment of the case by the juror after he was sworn, and did not decide on the credibility of the witnesses.

The statute on this subject provides that every juror, grand or petit, shall be a free white citizen of this state, resident in the county, sober and judicious, of good reputation, over twenty-one years of age, and otherwise qualified. (R. C. 1855, p. 910, § 3.) By the eighth section, any person summoned as a grand or petit juror, who is not qualified as required by law, may be challenged and discharged upon such challenge being verified according to law or by his own oath. The ninth section of the same act says that no exception to a juror on account of his citizenship, nonresidence, state or age, or *other legal disability*, shall be allowed after the jury is sworn. Turning to the act concerning practice in criminal cases (R. C. 1855, p. 1190, § 7) it is there provided that there shall be " summoned and returned in every criminal cause a number of *qualified* jurors," &c. Sections fourteen and fifteen of chapter six mention certain causes of challenge, and provide when it may be allowed in particular cases. (R. C. 1855, p. 1191, § 14, 15.)

These are all of the provisions of the statute on this subject that need be noticed. We are of opinion the court erred in its construction of the statute. Taking the several provisions together and construing them as one statute, we are forced to the conclusion that the " legal disabilities" spoken of in the ninth section are such as are contemplated by the third section. This interpretation gives full effect to the terms used in that section, is reasonable and consistent with all the provisions on the subject. The policy of the statute is, doubtless, to promote the fairness and impartiality of the

jury trial; and while the statutory requirements would tend to subserve this purpose, still the absence of certain requisites according to that standard in a juror is not necessarily inconsistent with an impartial trial, and these requisites a party may waive. They are such as he may inform himself of; and when no question is made before the juror is sworn, he is presumed to have waived them. But is he presumed to waive something that in the nature of the case could not be known by the exercise of any sort of diligence? To say that the law on this subject precludes the defendant from objecting, after trial, for a cause that could not have been known before and when the objection is to be taken, is an absurdity. If that is one of the legal disabilities, the law on the subject is a snare. No exception could be taken on this account, because no disability existed, or, which is the same thing for practical purposes, none appeared or could have been discovered. The only test known to human tribunals to test the conscience and mind of the juror was applied, and according to that he was found unexceptionable. What more could have been done? The law was enacted for practical purposes in the administration of justice, and does not require impossibilities; and it is not to receive a construction that would work wrong and injustice, and fetter the accused in the assertion of his constitutional rights to an impartial trial by jury, when it is susceptible of a more reasonable construction.

If the disabilities of the ninth section were intended to include the objection to the juror in this case, it is remarkable that that, which more than any thing else affects the fairness of and impartiality of the trial, should not have been deemed of equal importance at least with that of age, residence and such like, and have been mentioned in the enumeration of the statutory requisites, but instead of which it should be included in the general class of unenumerated qualifications not deemed of sufficient consequence to be referred to other than in the sweeping phrase that concludes that section.

Judge Napton concurring, the judgment will be reversed and the case remanded.

SCOTT, Judge.   There is an important question involved in this case, and I will submit my views in relation to it.   I do not hold to the opinion, that when the accused has been convicted of murder in the second degree, or any other grade of homicide, on an indictment for murder in the first degree, and a new trial is granted, that such conviction operates as an acquittal of the crime of murder in the first degree, and prevents, on a second-trial, the accused from being tried for that offence.

The first difficulty that suggests itself in maintaining that the verdict, notwithstanding the granting of a new trial, operates as an acquittal of the crime of murder in the first degree, is that, if such is the effect of it, then there is no charge on the second trial on which the accused can be tried. Conceding that under an indictment for murder in the first degree, a party may be convicted of murder in the second degree or any other grade of homicide, yet the crime of murder in the first degree includes all those grades, and if the conviction discharges the accused of that offence, what is the charge on which he can be tried ?   Being acquitted of the greater, which includes all the less offences, how can he be tried for any of them ?   What is there on which the party can be arraigned ?   If he can answer the indictment with the plea of a former acquittal, is there any thing remaining on which a judgment against him can be founded ? It is no answer to this to say that the accused is only acquitted of the crime of murder in the first degree, and that he may be tried for any less offence included in the indictment. The indictment only consists of one count charging the crime of murder in the first degree, and after the accused is acquitted of that, there is nothing remaining on which a prosecution can be sustained.   Greenleaf, speaking of the maxim that no person shall be subject for the same offence to be twice put in jeopardy of life or limb, says that it applies

wherever the first indictment was for a greater offence, and the second is for a less offence, which is included in the greater. Thus, if the first indictment, of which the prisoner was acquitted, was for burglary and larceny, and he be afterwards indicted for larceny only; or if he were indicted of any other compound offence, such as robbery, murder or the like, and acquitted; and afterwards he be indicted of any less offence, which was included in the greater, such as larceny from the person, manslaughter, or the like, he may show the acquittal upon the first indictment in bar of the second, for he might have been convicted of the less offence upon the indictment for the greater. (3 Greenl. Ev. § 36.) If this is the law upon separate indictments, it must have much more force when applied to the same indictment. How will the court proceed upon the second trial, if the party to be tried is not guilty of the offence charged in the indictment? By what rule will the right to challenges be regulated? Is he to have a list of the panel forty-eight hours before the trial? Is he charged with murder in the second degree; or with manslaughter in the first, second, third or fourth degree? If he is charged with all of them jointly, is there not a misjoinder? Are not the number of challenges different for these different offences? It can not be said that the same difficulties would arise on the first trial on an indictment for murder in the first degree. There the party is charged with a specific offence, which determines the mode of proceeding. But when it is admitted that the person to be tried is innocent of the offence alleged against him, all that can be said is that he is guilty of some one of the less offences of which he might have been convicted had he been tried for murder in the first degree. If I understand the argument, it is that the verdict on an indictment for murder in the first degree finding the accused guilty of murder in the second degree, although that verdict is set aside and a new trial awarded, yet by the constitutional provision, which declares that no man shall be tried twice for the same offence, the accused stands acquitted of the crime

of murder in the first degree, and must be tried for some inferior grade of homicide. In the case of the State v. Slaughter, 6 Humph. 414, that from which all the cases have come which uphold the opinion that is now combatted, the court attributes to the verdict, finding a party guilty of manslaughter who is tried for murder, the effect of an acquittal for the crime of murder, and that on the ground that a party shall not twice be put in jeopardy for the same offence.

Although it was once controverted, (United States v. Gilbert, 2 Sum. 42,) yet it is now no longer an open question that in criminal cases a court may grant the accused a new trial, although the effect of it is to put him a second time in jeopardy for the same offence. The party then may waive this constitutional right. The constitution requires that the accused shall have a speedy trial by an impartial jury of the vicinage. Under this provision, can he not consent to a continuance when there is no cause for it? If he asks for a continuance as a favor, and it is granted to him without any reason, is he thereby discharged from the prosecution? Can he not waive the right to a trial by a jury of the vicinage, and take a change of venue? Was not this right waived in this very cause? After a jury have been charged with the trial of a prisoner, upon an indictment for a capital offence, they can not, in some cases, be discharged and the prisoner remanded for a second trial but with the consent of the prisoner, when, without such consent, the discharge would have operated as an acquittal. (State v. McGee, 1 Bailey, 651.) Although this case was only an exposition of the maxim of the common law, that no person shall be twice tried for the same offence, yet, Judge Story, in the case of Gilbert, above cited, speaking in relation to it, says: "The constitution of the United States only incorporated into itself a maxim embedded in the very elements of the common law." (*Ex parte* Ruthven, 17 Mo. 541; Lisle v. The State, 6 Mo. 426.) In the case of the People v. McKay, 18 John. 212, the court says: "It will be observed, that the judgment is arrested on the motion of the prisoner. An act

done at the request and for the benefit of a prisoner, we are clearly of opinion, can not exonerate him from another trial." (See the opinion of Judge Davis in the case of United States v. Gilbert, 2 Sum. 99.) If, then, the accused can waive a constitutional or legal right in a capital case, why should we not hold that, in asking for and accepting a new trial and consenting that a verdict be set aside, that he thereby waives all the benefits of that verdict; that he can not ask that a verdict shall be set aside, and notwithstanding at the same time have its force; that having the power to waive a constitutional privilege and having applied for and obtained a new trial, he shall, like all others who receive that favor, be deemed to have waived all the advantages of the verdict and to stand precisely as though it had never been rendered? It is admitted that a verdict finding a prisoner guilty of manslaughter, or any other grade of homicide, on an indictment for murder, is, so long as the verdict stands, an acquittal of the crime of murder. But when the verdict is set aside we are left to reason, the nature of things, and the analogies of the law, in order to determine its effects. If one is sued for a thousand dollars and there is a verdict against him for five hundred dollars and a new trial is granted, with what face could he insist, on the second trial, that the first verdict being for five hundred dollars, the plaintiff could not recover against him more than that sum, because by the first verdict it was ascertained that he did not owe more, and therefore there can not be a recovery against him for a greater amount? Is not a plea of former recovery as valid as a plea of former acquittal? Will it be said that in the former case the verdict was set aside and there was no judgment upon it? Do not the same objections arise in the latter case? When the verdict is set aside in the one case, is it not as though it had never been? On what principle can a result be arrived at [different in the one case from that in] the other? Indeed, the argument involves the incongruity of ideas, that a thing may be destroyed and dead and yet retain its vitality.

It can not be maintained that in this case there were two verdicts, one acquitting the prisoner of murder in the first and the other finding him guilty of murder in the second degree. When there is but one crime, one count in an indictment, and one prisoner, there can be but one verdict, however it may be expressed. In such a case a verdict is necessarily an entirety, and must all stand or fall. The case is wide of that in which several are jointly indicted, and one of them is acquitted and the others found guilty, and a new trial is granted them. There, as the common law compelled these men to be jointly indicted and tried, nothing would be more unjust than to make the granting a new trial to those convicted deprive him who was acquitted of the benefit of his verdict and make him undergo another trial. In such cases, although there is formally but one verdict, reason, sense, law and justice say that it must be taken distributively. It is as though there were separate verdicts. The party to a verdict, when he himself is satisfied with it, can not, by the acts and conduct of those with whom he was compelled to unite, be deprived of its benefit. What is this to the case where the party himself is dissatisfied with the verdict, and has it set aside as a favor, which is granted to him, and then would assort out such parts of the verdict as suited him and have them stand, and have other portions of it hurtful to him vacated? Must we construe the voluntary act of the party, by which he waives a privilege, so as to secure to him the benefit of the act and the privilege also which is thereby waived? The verdict being regarded as an acquittal of the crime of murder in the first degree, and as that is the only offence charged in the indictment, though under it the accused may be convicted of an inferior grade of homicide, when he has not been acquitted of it there should be another indictment preferred after such acquittal. If such a course were pursued, what would prevent the party from availing himself of a plea of a former acquittal? Now, is our law fallen into such a state that it can not inform a man of the specific crime with which he is charged

but by insuring his acquittal ? Is it to witness a prisoner arraigned on an indictment charging an offence of which he is acquitted, and is that acquittal to be proved by a verdict which has been vacated and set aside ? Is it to be involved in all the anomalies and absurdities that will follow from the introduction of this principle, which is opposed to all reason and logic ?

The specific question in this case involved is the only one intended to be discussed. Cases are frequently cited in connection with this question which have nothing to do with it, and which steer clear of the difficulty which is presented by this—the absurdity of arraigning a prisoner on an indictment for an offence of which by the record he stands acquitted. The source of this doctrine is the case of Slaughter v. The State, 6 Humph. 414, a case in which the point was not involved, in which it is not discussed, and rests on a mere *obiter dictum ;* a case to which all the subsequent cases have referred, and seem to rely upon it as authority.

The views that have been expressed here on this subject are not unsupported by authority. In the case of the United States v. Harding, Wallace, jr. R. 147, Judges Grier and Kane on the bench, the prisoners were addressed as follows : " You ought clearly to understand and weigh well the position in which you stand. You have been once tried and acquitted of the higher grade of offence charged against you in this indictment, the penalty affixed to which is death ; but you have been convicted of the minor offence of manslaughter. Your lives have been in jeopardy and you have escaped. The constitution of your country declares that no person shall be twice put in jeopardy of life or limb for the same offence. This is to shield you against injustice and oppression, and put it out of the power of the court to subject you to another trial, except at your election and request. We believe that you have a right to waive the protection thrown around you by the constitution for the sake of obtaining what may seem to you a greater good ; but let me solemnly warn you to consider well the choice you are about to make.

Another jury, instead of acquitting you altogether, may find you guilty of the whole indictment and thus your lives may become forfeit to the law. If you choose to run this risk and again to put your lives in jeopardy, it must be by your own act and choice, being neither compelled nor advised thereto by the court, and when your solemn election shall have been put upon record, the court will hold you ever after estopped to allege that your constitutional rights have not been awarded to you." Wharton, whose familiarity with the criminal law entitles his opinions to great respect, speaking of the case in Tennessee, above referred to, says the doctrine of it has not been the uniform understanding in practice. The learned editors of the Leading Criminal Cases disapprove the doctrine of the case of Slaughter v. The State. (Lea. Cases, p. 502.) Wharton, in his Treatise on American Criminal Law, (p. 983,) says the uniform and unquestioned practice, down to a comparatively late period, has been to extend to criminal cases, so far as the revision of verdicts is concerned, the same principles which have been established in civil actions.

As the accused was on a trial for his life, the court should not have used Delphic language in charging the jury. When life is in jeopardy the instructions should be in as plain words as they can be expressed. They should be in reality, what they were designed for, aids to the jury in forming a correct verdict. If the proposition at the close of the sixth [fifth] instruction had been stated abstractedly, it would have been harmless, but taking it in connection with the matter which preceded it, it was injurious to the defendant; injurious from the very fact that its purpose is not disclosed, though it is sufficiently evident that it was prejudicial to the defendant by detracting in some way from the force of what had been previously stated.

This matter of instructions is becoming a source of great difficulty in the administration of our criminal law, where every error may be reviewed. Judges on the circuits are not supposed to be in a situation to write a long discourse on the

law. Neither the time nor the means are furnished them, and when it is announced that many instructions have been given for the State in a criminal case, it may almost be taken for granted that the judgment will be reversed. In most cases that come here, there is no necessity for instructions on the part of the State, and many plain cases on the evidence are reversed for erroneous instructions, when there was no necessity for them. How pleasing is the propensity in courts to give instructions to counsel for the defence in criminal prosecutions, where they can have every thing reviewed by an appellate court. The singing of the crow did not give the fox half the pleasure.