(72 South. 678)

No. 20731.

COATE BROS. v. NEW ORLEANS TERMINAL CO.

(April 24, 1916. On Application for Rehearing, May 22, 1916. Case Compromised and Dismissed by Consent Sept. 11, 1916.)

*(Syllabus by the Court.)*

1. CARRIERS ⊜⟲178—CARRIAGE OF GOODS—LIABILITY.

Where a delivering carrier stored merchandise on its own wharf to await the arrival of a vessel of a certain line to complete the transportation to a certain foreign port, its liability is that of a warehouseman, especially under a bill of lading stipulating that the contract for inland transportation should terminate on the delivery of the merchandise at said wharf.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 804–812; Dec. Dig. ⊜⟲178.]

2. CARRIERS ⊜⟲178 — LIABILITY AS WAREHOUSEMAN—NEGLIGENCE.

Where the merchandise so stored, consisting of cotton seed cake, a perishable commodity, was placed under a shed with a leaky roof, open sides and a wet floor, and only a portion of the goods was covered with tarpaulins, and in consequence the cake, or most of it, was damaged by mold and mildew, *held*, that the carrier was negligent in storing the goods in an unsafe and unsuitable place.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 804–812; Dec. Dig. ⊜⟲178.]

3. CARRIERS ⊜⟲178 — LIABILITY AS WAREHOUSEMAN—NEGLIGENCE—DEFENSES.

*Held*, under such circumstances, fogs, rain, and high waters, furnish no excuse, as they did not prevent the carrier from storing the goods in a warehouse or other dry place.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 804–812; Dec. Dig. ⊜⟲178.]

4. CARRIERS ⊜⟲178 — INTERSTATE TRANSPORTATION—CARMACK AMENDMENT.

*Held* that if the Carmack Amendment (Act June 29, 1906, c. 3591, § 7, pars. 11, 12, 34 Stat. 593 [U. S. Comp. St. 1913, § 8592]) has any application to this case, it does not prohibit this

action against the defendant, the carrier, by whose fault the goods were damaged.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 804–812; Dec. Dig. ☞178.]

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

Action by Coate Bros. against the New Orleans Terminal Company. From a judgment for defendant, plaintiffs appeal. Reversed.

Miller, Miller & Fletchinger, of New Orleans, for appellants. Hall, Monroe & Lemann, of New Orleans, for appellee.

LAND, J. Plaintiffs sued the defendant to recover $3,048.95, damages on a shipment of 24 carloads of cotton seed cake by rail from Leland, Miss., consigned to Aarhus, Denmark, in care of the Gans Line, at New Orleans.

The petition alleges that the said cars were delivered to the New Orleans Terminal Company, at New Orleans, the said defendant in turn being under duty, having accepted said cars, to deliver the same in like good order and condition to the Gans Steamship Line for transportation to Aarhus.

The petition further alleges that the greater part of said merchandise was by defendant stored on its docks at Chalmette, La., and while on said docks, through negligence and lack of protection, was exposed to the elements, to the waters of the Mississippi, and became damp, moldy, and unfit for shipment; that the floors of said docks were wet and decayed, and the waters of said river came within a few inches of said merchandise; that the roofs of said docks were leaky, and there were no awnings or tarpaulins on the sides or on the ends of said docks to protect said merchandise from frequent rains and from fogs and dampness, and no gutters to carry off the water from the roofs of said docks.

The petition further alleges that 516.05 tons of said cake were so damaged as to be absolutely unfit for shipment, and that plaintiffs, with reservation of all their rights, caused the same to be reworked, repressed, and resacked, to restore it to merchantable condition for exportation, at a cost of $5 per ton, or a total of $2,580.30, and that by reason of the damage to said cake plaintiffs were compelled to pay, and paid, to the defendant, the sum of $468.65, as storage, under protest, which said storage charges would not have been incurred if defendant had conserved and protected said merchandise.

The answer admits the receipt of the shipment by defendant, and avers that the 24 cars of cake were delivered in due course and proper season at respondents' wharf at Chalmette, and for several days thereafter the said cake was in good condition, and that in such condition it was stored by respondent in its wharf sheds at Chalmette to await the arrival of the ship to complete its transportation.

[1] The answer further avers that shortly after the said delivery of the cake a ship of the Gans Line called at the said wharf, but refused to take said cake, because its load had already been completed; that thereupon said cake was stored in defendant's warehouse on the river front at Chalmette, and under the terms of the bill of lading was held "at the sole risk of the owner of said property."

The answer further avers that at the time of said shipment, and for weeks before and after its arrival at Chalmette, the whole section of country thereabouts was visited by unprecedented fogs, dampness, and floods, against which it was not possible to make preparations; that the Mississippi river, over which the respondent's warehouse is located, rose to an extent never before paralleled, but did not flood the warehouse, and did not reach the floor thereof by a distance of more than 12 inches.

The answer further avers that the whole damage to the cake, if any, was caused by the unprecedented flood, dampness, and hu-

midity as above stated, over which the respondent had no control, and could not prevent or guard against.

. The answer finally avers that the whole alleged loss was caused by the elements beyond respondent's control, and that under the terms of the bill of lading the goods were at the time of the loss stored solely at the risk of the owner.

In a supplemental answer the defendant admitted that plaintiffs expended $468.65 for storage charges, and annexed the original bills of lading for all of the cars in question except 6, as to which the defendant annexed copies, averring that the originals had been turned over to the steamship company.

The case was tried, and the plaintiffs have appealed from a judgment in favor of the defendant.

The judge below found that the goods had been delivered on the usual dock set forth in the bill of lading, but that the shipment was refused by the steamer from lack of space, and was left on the dock where the damage was sustained.

The judge further found that the damage was done by the moisture arising from the high river at the time and the prevailing fogs of the season, and was of opinion that the plaintiff was bound to take notice of the conditions under which the defendant was acting, and presumably assumed the risk attending the storage of his property on the wharf.

It appears from the evidence that only 17 cars of cake are involved in this litigation. These cars were placed beneath a shed on defendants' wharf at Chalmette ready for delivery to the Gans Line. The first steamship which called refused, for want of room, to take the cake; and the second steamship refused because the cake had molded so as to become unmerchantable.

Condition No. 5 of the B/L reads in part as follows:

139 LA.—31

"Property not removed by connecting carrier within twenty-four hours after its arrival at the port may be kept in the vessel, or depot or place of delivery of the carrier, at the risk of the carrier as warehouseman only, or may be at the option of the carrier removed and otherwise stored in a public warehouse at the owner's costs, and there be held subject to lien for freight and other charges."

Condition No. 13 reads:

"This contract is executed and accomplished, and all liability thereunder terminates, upon delivery of said property to the exporting steamer, her master, agents or servants, or to the exporting steamship company, or on the pier usually used by the exporting steamer at said port, whether or not the same may be the property of or used by the inland carrier also, and the inland freight and all other hereinbefore provided for charges shall be a first lien, due and payable by the exporting steamer or exporting steamship company."

Under the express terms of the contract, the inland transportation of the cake was executed and accomplished by the delivery of the cars at defendants' wharf at Chalmette, shown by the evidence to be the usual place for the loading of vessels belonging to the Gans Line. Thereafter the obligation of the defendant was that of a warehouseman, with the option to store the cake in a public warehouse at the owner's cost. Defendant's warehouse, so called, was an open shed, with a leaky roof, and was unusually damp, because built over the river, and open to the weather.

Mr. Emile Prager, cotton seed products inspector for the Interstate Cotton Seed Crushers' Association, testified that he examined the cake, and found it unmerchantable, as a result of dampness, water, and both; that such damage would not result from dampness alone; that the wharf was wet and damp, the roof leaked, there were no gutters, the sides were open, the river water was only eight inches below the floor; and that the Chalmette wharf was not a suitable place for storing cotton seed cake.

Mr. Geo. P. Faure, marine insurance agent, testified to the same general conditions. He found the cake very moldy and mildewed,

and expressed the opinion that the shed was "very poor, indeed, for such valuable and perishable merchandise as cotton seed cake."

Mr. J. J. Drawe, official inspector of cotton seed products of the Board of Trade, found the cake in a very bad condition, mildewed and moldy, not merchantable as a food product, and unfit for export. He found the condition of the wharf very bad, and the dock not a fit place for the storage of cotton seed cake. He testified that the roof was leaky; that some of the cake was covered by tarpaulins, but more of it was not covered; that the roof leaked, and the water ran down on the cake.

Mr. Oscar Reep, an employé of the New Orleans Cotton Seed Export Company, testified that he found at defendant's wharf a shed that you could not call a warehouse, and that he did not consider it a fit place for storing cake at that time.

The defendant offered a single witness, the dockkeeper, in rebuttal.

[2] The only defense made in the answer is that the damage was caused by unusual damp, fog and water, which defendant could not control or prevent. Defendant surely could have stopped the leaks in the roof of its shed, and have covered all the cars with tarpaulins. Above all the defendant could have stored the goods in some public warehouse, at the cost of the owners.

[3] The defendant undertook to keep the goods until called for by the steamship company. It is true that, in the case of prior shipments, the defendant had kept the goods in its sheds on the wharf. But the defendant should have known that, under the weather conditions then prevailing, its shed, with leaky roof and open sides, was an unsafe place of deposit for cotton seed cake, perishable in nature, by reason of its susceptibility to mold and mildew.

[4] We do not think that the new Interstate Commerce Act (Act June 29, 1906, c. 3591, 34 Stat. 584) has any application to a case like this, where the interstate shipment had terminated, and the delivering carrier held the goods as bailee for the steamship line.

The contention of defendant that plaintiffs' right of action is against the initial carrier, and not against defendant, is sustained by a Georgia case, which stands alone, as appears from the following quotation:

"But the rule which allows the action against the carrier in fault as well as against the one who is primarily responsible commends itself upon grounds of both justice and convenience, and, with the above exception, is the universal law of this country." Hutchinson Carriers (3d Ed.) § 236, p. 255.

This doctrine has been adopted by this court. See Duvall v. Louisiana Western Railway Co., 135 La. 189, 65 South. 104; Id., 136 La. 526, 67 South. 354.

Under the extraordinary weather conditions set forth in the answer prevailing before and at the time the shipment was received by the defendant, the storage of the cars under the leaky shed, open on the sides to the weather, constituted, in our opinion, a clear case of negligence. Under such conditions common prudence dictated the storage of the goods in some suitable warehouse.

It is therefore ordered that the judgment below be reversed, and it is now ordered that the plaintiffs do have and recover of the defendant the sum of $3,048.95, with legal interest on $2,580.30 from September 12, 1912, until paid, and costs in both courts.

MONROE, C. J., and SOMMERVILLE, J., take no part.

### On Application for Rehearing.

PER CURIAM. The right of the plaintiffs to recover storage charges was not considered in the opinion of this court, because not called to our attention. It is therefore ordered that a rehearing be granted as to said charges, but otherwise refused.