———— ·o·o·o· ————

HILL et al., Appellants, v. STURGEON & RAWLINGS, Respondents.

28   323
31a  209
31a  210
33a  289
28   323
38a  229

28   323
64a  548

1. A common carrier is an insurer of goods entrusted to him for transportation; if loss or damage occur, he is liable unless he shows affirmatively that it happened by reason of some one of the excepted perils. The onus being upon the carrier, he will not be discharged from liability by showing that the navigation was difficult or dangerous, or that he employed skillful or competent persons to control and manage the boat; he must show that the loss occurred in a manner and for a cause that will acquit him.
2. The words "dangers of the river, &c.," in a bill of lading, mean only the natural accidents incident to river navigation, and do not embrace such as may be avoided by the exercise of the skill, judgment and foresight demanded of the carrier.
3. If at the time of a disaster and consequent damage or loss of goods in charge of a carrier, he is guilty of some delinquency—as by having an incompetent pilot in charge of the boat—if such delinquency might have contributed to the disaster or might have had an agency in producing it, he will be liable; he may, however, show by way of defence that the disaster must have occurred although the delinquency had never existed.
4. A pilot, who is acquainted with the place of a disaster and with the character for skill of the pilot or steersman in charge of the boat at the time of the disaster, may testify as to whether it was prudent to allow the latter to pilot the boat at the time of the accident.
5. When either party to a cause offers to read a deposition taken therein, he must read the whole of it, except such portions, if any, as are ruled out by the court as inadmissible.
6. A clause in a bill of lading given in behalf of a steamboat for goods shipped on a barge, to the effect that the steamboat and owners "insure the freight shipped on the barge against leaking and sinking," is intended to insure only the seaworthiness of the barge.

*Appeal from St. Louis Court of Common Pleas.*

The facts sufficiently appear in the opinion of the court.

*Knox & Kellogg*, for appellant.

I. The owners were liable for a loss caused by the sinking of the barge. The court erred in striking out those portions of the deposition of Credell, in which he stated that he would not on his own responsibility trust Decker to stand on watch. This was clearly competent as the opinion of a skillful pilot, fully acquainted with Decker's skill and competency. Decker's deposition should have been excluded. The evidence clearly shows that the loss was not caused by an unavoidable danger of navigation. Decker was not a competent pilot. The boat was in default, and this delinquency *might* have had an agency in producing the disaster. (11 Mo. 309.) The court erred in refusing the instructions asked by the plaintiff, and in giving those asked by defendant. (See generally 4 Yerg. 48; 5 Yerg. 82; 7 Yerg. 342; 2 Sumn. 571; 1 Murph. 417; 2 Bailey, 161; 1 Wils. 282; 8 Bet. 584; 11 Mo. 306; 2 Stew. & Port. 176; 1 Sumn. 218; 6 Bing. 716; 2 Watts, 114; 4 Binn. 127; Sto. on Bail. § 413, 492, 516; 3 Kent Comm. 220; 6 Cow. 266; 8 Watts & S. 44.)

*B. A. Hill*, for respondent.

I. The goods on the barge were lost by the unavoidable danger of the river. The instructions put this question to the jury fairly. (See 11 Miss. 299; 5 Yerg. 71; 8 S. & R. 553; 2 Watts, 443; 19 Wend. 234, 251; 21 Wend. 354; 2 Hill, 626; 3 Hill, 1; 17 Wend. 305; 1 Murph. 417; 1 Nott & McC. 170; 21 Wend. 190.) The insurance clause in the bill of lading is not an insurance on cargo but upon freight. (See Toml. Law Dic. tit. Freight; 2 Cranch, 240; 8 Wheat. 505; 7 Cranch, 358; 12 Wheat. 383; 1 Shep. 357; 1 Ired. 236; 3 Sumn. 542; 1 Story, 343; 1 Speer, 321; 9 Leigh, 532; 2 Sto. 81; 2 McLean, 442; 2 Pothier on Obl. 37; Co. Litt. 147 *a*; 4 Dow. P. C. 65; 8 Bingh.

244; 7 T. R. 423; 3 Dall. 199; 4 Watts, 89; 7 Greenl. 385; 11 East, 312; 4 Camp. 279; 8 Taunt. 260; 15 Mass. 433; 2 B. & Ad. 746; 1 T. R. 638. The clause was designed to insure only the seaworthiness of the barge. The court did not err in striking out portions of the depositions of Fulton and Credell.

RICHARDSON, Judge, delivered the opinion of the court.

The plaintiffs, who were the owners of the steamboat D. S. Stacey, brought their action against the defendants, who were the owners of the steamboat Ironton and the barge John Argent, to recover the value of merchandise shipped by the Stacey on the steamboat Ironton and barge John Argent. A bill of lading in the usual form was executed by Rawlings, master of the Ironton, in which the dangers of the river and of fire were excepted, and to which was added the following clause: " The steamboat Ironton and owners insure the freight shipped on the barge against leaking and sinking." On the 22d of October, 1853, the Stacey stopped at Hat Island, in the Mississippi river, being too heavily laden to bring her cargo over the bars, and for that reason shipped part of her cargo on the Ironton and the barge John Argent to be brought to St. Louis. The river at that time was very low and the navigation difficult and dangerous. It was shown that on the night of the 23d October, 1853, before the moon rose, the Ironton, whilst running up stream in Rozier's Bend, about sixty miles below St. Louis, with two barges in tow, took a sheer to the larboard, on which side the barge Argent was attached, and drifted so abruptly and violently against the bank that the side of the barge was forced in, which caused it to sink, and by that means property of the plaintiff of the value of fifteen thousand dollars was lost. The plaintiffs contend that the goods were lost by the negligence of the defendants in having an unskillful and incompetent pilot at the wheel at the time of the accident; but the defendants insist that the loss was caused by an unavoidable peril of the river.

There was evidence tending to show that, though all boats

are liable to sheer, boats of the class of the Ironton were especially so, and the liability is greater when they have barges in tow and are running at night; that in low stages of the water and difficult parts of the river boats towing barges ought to be conducted by skillful and competent pilots, for, although a boat may sheer and may be injured in the hands of the best pilot, yet all the witnesses agree in saying that pilots of skill and experience are more likely to foresee the causes that produce sheering and thus avoid them, and are more competent to check with facility and promptness a boat that has sheered and thus prevent it from receiving injury; that various causes operate to make a boat sheer, among the known causes of which are shoal water, counter or cross currents, boils in the river, eddies, inequalities of the bottom, narrow channels, rocks or snags, running too near a bar, adverse winds, defective model, improper loading or trimming of a boat, and bad steering; that many of these causes are visible, especially to a practiced eye, and of course are more readily seen and guarded against in the day time than in the night.

There was also evidence tending to show that Credell was the only pilot on board; that he retired about sun-set, telling the captain that it was better not to run the boat after dark until the moon rose, and was in his bed asleep at the time of the accident; also that, after Credell retired, Henry Decker, who was not a pilot but a mere steersman, took charge of the wheel and was steering the boat when the barge sunk; that regular and competent pilots received that season from two hundred to two hundred and fifty dollars per month, but Decker was employed at forty dollars per month, with the privilege of keeping a bar on the boat, which carried no passengers, and that he had made only five or six trips on the river between St. Louis and Cairo as a steersman, whereas, in the opinion of many of the witnesses, it was unsafe to trust a person with that amount of experience to pilot a boat in the night with barges in tow.

It is a rule founded on public policy and convenience that

common carriers are insurers of goods entrusted to them for carriage, and are liable in all events for any loss or damage, unless it happen by some cause or accident for which the law excuses them, or from some cause expressly excepted in the bill of lading; and, when goods are proved to have been delivered to a carrier, the burden is on him to show that he fully performed his contract or that they were lost by one of the excepted perils. The law presumes against him, and he will not be excused by showing that the navigation was difficult or dangerous, or that he employed skillful and competent persons to conduct the boat; but he must discharge himself from liability by showing that the loss occurred in a manner and from a cause that will acquit him. By the common law, all human agency is to be excluded from the cause that produced the injury, and though the usual clause in bills of lading, of " dangers of the river," operates to widen the exceptions, these words only mean the natural accidents incident to river navigation, and do not embrace such as may be avoided by the exercise of that skill, judgment or foresight which are demanded from persons in a particular occupation. (Coggs v. Bernard, 1 Smith's Lea. Cas. 270 and notes.)

The carrier is not only bound to provide a vessel which is tight, staunch and strong, and in all respects fully equipped for the voyage on which he proposes to embark, but he must employ diligent and skillful officers; for he is responsible for damages resulting from a defect of the vessel, or from want of care and attention on the part of her officers, and also from the want of proper knowledge and skill to manage her. It was formerly held that if the carrier was delinquent in any of his duties, and a loss occurred whilst his wrongful act was in operation and force, though it did not remotely contribute to the injury, he could not set up as a defence to the action the bare possibility of a loss if he had been all the time in the line of his duty; but it is now held that he will not be responsible if the loss was wholly independent of his

default, and, not *might*, but *must*, have happened in any aspect of the case. This is the principle decided by this court in Collier v. Valentine, 11 Mo. 309, in which it was held that the carrier "is permitted to show, by way of defence, that, although he may have been in default, yet that the loss was independent of that default and *must* have happened although it had never existed; but a delinquency, which might have contributed to the disaster occasioning the loss, or negligence or carelessness at the time of its occurrence, which might have had an agency in producing it, will render him liable." Human life and valuable property are committed to the honesty, the diligence and skill of the owners and officers of steamboats and other vessels; and as the public have no means of knowing whether the boat or vessel is safe, or whether the officers are competent for their places, their only security is in the vigor of the law and its faithful administration, which hold the carrier to a severe responsibility. He should not be allowed to trifle with the lives and property of others by risking either in unsafe crafts, or by committing them to the mercy of negligent or incompetent officers. And if, at the time the loss happens, the carrier is in the omission of a duty or in the act of doing any thing improper, and the omission or act might have had an agency in causing the damage, he ought not to be permitted to impute to the elements in the dangers of navigation a disaster which may have been the result of his own conduct. If it appear that the sheering of the boat was caused by running too near to the bar on the starboard, or by any other imprudence, or by neglecting any proper measure of precaution, the defendants will be liable. And if it is shown that Decker was not a competent pilot, the plaintiff will not be required to prove affirmatively that the loss resulted from any want of attention or skill on his part at the time of the accident, but the onus will be on the defendants to establish that the loss must have happened if a competent pilot had been at the helm. The defendants are bound to show that the loss was caused by a

Hill v. Sturgeon & Rawlings.

peril of the river which could not have been foreseen or prevented by the exercise of skill or diligence; and they can only exonerate themselves by showing that the injury not only might but must have occurred independently of their neglect, and that the presence of Decker at the wheel did not in any manner contribute to it.

The witness should have been allowed to answer the question whether it was proper to suffer Decker to pilot the boat at the time and at the place of the accident. He knew the pilot and the place, and, as an expert, was competent to answer the question.

We see nothing in the objection to the competency of Decker as a witness, or to the propriety of reading his deposition.

The obscurity of the record is such that we do not understand the nature or scope of the objection to the reading of Credell's deposition taken by the defendants. If, however, it is intended to present the point whether a party can read to the jury only such portions of a deposition as suits them, we say that when either party offers to read a deposition which has been taken in the cause, he must read all of it, except, of course, such parts as are decided by the court to be incompetent.

The last clause in the bill of lading, we think, was only intended to insure the seaworthiness of the barge, that it should not leak or sink by reason of its infirmities. It was not designed to insure the goods shipped on the barge from loss that might happen to it by external violence, for such a construction would not only do away with the common law exceptions, but those expressly named in a previous part of the bill of lading.

The other judges concurring, the judgment will be reversed and the cause remanded.