"First, the organization of said board of commissioners of the Bayou Terre-aux-Bœufs drainage district to have been improperly organized and constituted."

One of the grounds upon which plaintiff assails the levy of the tax and the issue of the bonds appears to us to be fatal and dispenses us from any examination of the others. It is that the election for consulting the taxpayers in regard to said tax and issuance of bonds was held under the auspices of the board of commissioners of the district, instead of under the auspices of the police jury. The question whether such an election should be held by the police jury or by the board of commissioners of the district was carefully considered by this court in the case of Mayor, etc., of Town of New Iberia v. Drainage District, 106 La. 651, 31 South. 305. It was there decided that the power to hold such an election is vested exclusively in the police jury.

The police jury have been the only body vested with authority to hold an election, and, not having held any, the situation is that no election has been held. The board of commissioners not having been vested with any authority to hold an election, the so-called election held by it was a mere empty form.

No election having been held, the prescription of six months established by section 17 of Act No. 5, p. 12, of 1899, against any action to contest the regularity of an election, is inapplicable.

121 La.—32

It may be well to add that the contention of plaintiff that the board of commissioners of the district was without power to repeal an ordinance theretofore adopted by itself, and adopt another in its place, is without merit.

The judgment appealed from is therefore set aside, and it is now ordered, adjudged, and decreed that the so-called election held under and by virtue of the ordinance adopted on March 2, 1907, by the board of commissioners of the Bayou Terre-aux-Bœufs drainage district, is hereby decreed to have been a nullity and of no effect; and it is further ordered, adjudged, and decreed that the said board of commissioners be perpetually enjoined from levying the tax and the local contribution, and from issuing the bonds purporting to have been authorized at said election.

Defendant to pay costs.

─────

(46 South. 993.)

No. 17,021.

THOMPSON v. SOUTHERN PAC. CO. et al.

(June 22, 1908.    Rehearing Denied June 30, 1908.)

CARRIERS — CONNECTING CARRIERS — LIVE STOCK SHIPMENT—LIABILITIES.

A delivering carrier, having received a lot of mules which were in bad condition, as the result, apparently, of neglect whilst in the hands of the receiving carrier, and having at once unloaded, fed, and watered them, and within 24 hours forwarded them to their destination, is not liable for the damages sustained by the shipper in the depreciation in the value of the animals; but, being a party to the contract under which the mules were transported, such receiving carrier, upon the refusal of the owner to take them, was at liberty to deal with the matter as it saw fit, for the protection of its own interests, and, having agreed that the mules should be cared for at its expense, until other provision should be made, is liable, under the contract, for their care and feed.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, §§ 950, 951.]

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. E. Ellis, Judge.

Action by R. Emerson Thompson against the Southern Pacific Company and the Yazoo & Mississippi Valley Railroad Company. Judgment for plaintiff against the defendant the Yazoo & Mississippi Valley Railroad Company, and it appeals. Amended and affirmed.

Gustave Lemle and Hunter Collins Leake (Jacob McGavock Dickinson, of counsel), for appellant. Foster, Milling & Godchaux and Alexis Brian, for appellee.

### Statement of the Case.

MONROE, J. Plaintiff sued the two companies named in the title as the receiving and delivering carriers, respectively, for damages resulting from their alleged negligent handling of a lot of mules and for expenses incurred by him in feeding the mules. After the suit had been instituted, he accepted $600 from the Southern Pacific Company (the receiving carrier), as in full payment of all demands against it, and thereafter obtained judgment against the other defendant for $1,690.50.

It appears from the evidence: That on November 16, 1903, plaintiff delivered 33 mules to the San Antonio & Aransas Pass Railroad Company (said to be controlled by the Southern Pacific Company), at Pettus, Tex., for transportation to Wilson, La., and a through bill of lading was issued therefor. That the mules were brought over the roads of the receiving company and the Southern Pacific to New Orleans and delivered to the Yazoo & Mississippi Valley Railroad Company (the present defendant) on November 21st. That, when so delivered, they were in very bad condition, having, in all probability, received neither food nor water from the time they were shipped. That they were at once unloaded into pens, where they were kept for 24 hours, during which time they were given hay and water. That at 6 o'clock p. m., on November 22d, they were loaded on a car which reached Wilson the next day;

plaintiff being notified of their arrival about an hour before sundown. He testifies that he refused to receive them, and, further, as follows, to wit:

"The superintendent of the road was in town, and some one notified me he was there, so I went after him and carried him to the pen to see them. * * * When he saw the mules, he remarked they were in the worst condition he ever saw. He went in the pen and he says: 'This beats anything I ever saw.' That was his remark. Well, then, it was a cold, bad evening, and the mules were very emaciated and starved to death, and he asked the stableman, who runs the livery stable in the town, if he would take them and care for them, and he remarked that he had no room; * * * that he did not have room for that number. Then he asked some one what he would do, and there was a gentleman there who remarked * * * that me, myself, was the only man who was prepared to take care of that many mules. He turned to me and asked me would I take them and care for them, for account of the Y. & M. V. * * * Now, I said: 'I want it distinctly understood I will not receive them. Give me a written order for them.' He said: 'It's not necessary. Here is the agent.' The depot agent was standing there, and he said: 'Deliver the mules to Mr. Thompson to be cared for for our account.' I went over that again. I wanted that distinctly understood. So, under those conditions, I took them home."

He further testifies: That the superintendent promised to send a man, the next day, to take the matter up and dispose of the mules in some way, but that the man did not appear; that he (plaintiff), about a week later, wrote a letter reminding defendant of the promise to take the mules off his hands, and saying that it would be advisable, as he was charging 50 cents a day, per head, for keeping them; and that he received no answer to his letter. He, subsequently (on the 12th of January, as it appears), received the mules, with a reservation of his claim for damages, the amount of which was fixed by the judge a quo at $1,449, from which he subtracted the $600 paid by the Southern Pacific Company, leaving $849, and to that he added the feed bill of $841.50, making a total of $1,690.50, for which he gave judgment.

Defendant has appealed.

Opinion.

The evidence does not appear to us to establish the negligence charged against the defendant; the mules having been received by it in bad condition, and having been at once unloaded into pens and supplied with food and water, and, 24 hours later, forwarded to their destination. Defendant was, however, a party to the contract under which the mules had been shipped, and, upon plaintiff's refusal to receive them, was at liberty to deal with the matter as it saw fit, for the protection of its own interest. There was no attempt to contradict plaintiff's testimony (which went in without objection) to the effect that defendant's superintendent agreed that plaintiff should care for the mules, until some other disposition should be made of them, at defendant's expense; nor was there any attempt to rebut the testimony showing that the charge made is reasonable.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be reduced to $841.50, and, as thus amended, affirmed; plaintiff to pay the cost of the appeal.