PROVO STY, J.
The judges of the Court of Appeal for the First District have certified to this court the following question:
“In a case like this, where plaintiff proves only that the damages occurred somewhere between the point of shipment and the point of delivery, but fails absolutely to show that the damage occurred to the' stock whilst it was in custody of defendant company and whilst it was being transported over its line, or where the proof fails to show on which of the intermediate railroad lines the damage was inflicted on the stock, is not plaintiff, under such a state of facts by virtue of the Carmack Amendment, relegated for recovery to a suit in damages against the initial carrier? ”
From an opinion of our Brethren upon this question, from which they granted a rehearing, and a copy of which they have transmitted along with said question, we ascertain that they are not in doubt as to the consignee having continued, notwithstanding the said Carmack Amendment, to have a right of action against the particular connecting carrier on whose line, or by whose fault, the loss has occurred; and that the precise point on which they desire to have advice from this court is as to whether the rule of evidence by which goods received in good order by the initial carrier are presumed to have been received in like good order by the succeeding carrier (3 Ann. Cas. 585, note; 6 Cyc. 490; Hutchinson on Carriers [2d Ed.] § 761, p. 898, also notes) has been done away with by the said amendment.
Said amendment (34 U. S. Stat. 584) reads as follows:
*192 “That any common carrier, railroad, or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, deregulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed: Provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing
“That the common carrier, railroad, or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad, or transportation company on whose line the loss, damage, or injury shall have been sustained the amount of such loss, damage, or injury as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment, or transcript thereof.”
The said rule of evidence is not even alluded to in this amendment; but the learned counsel for the railroad company argues as follows:
“Only the initial carrier issuing the original receipt or bill of lading can recover from the other carriers what it has paid out for them; and therefore if it is held the delivering carrier is bound for the faults of the initial or intermediate carriers under the terms of the law, it is given no redress.”
[1] We cannot see why the delivering carrier should not have now the same redress that it may have had before the adoption of this amendment. There is certainly nothing against it in the amendment. Because the initial carrier is given recourse in such a case against the succeeding carrier is no reason for concluding that any right of recourse a succeeding carrier may heretofore have had in such a case against the initial, or any preceding, carrier has been taken away. The two are entirely and perfectly consistent. Prior to the adoption of this amendment, the initial carrier could, and very often did, assume, by a contract for through transportation, the same liability for faults of succeeding carriers which this amendment now im poses upon it as matter of law; and in England the rule is that such a contract for through transportation is inferred in the absence of contrary stipulations (Atl. Coast Line R. Co. v. Riverside Mills, 219 U. S. 186, 31 Sup. Ct. 164, 55 L. Ed. 167, 31 L. R. A. [N. S.] 7); and, as a matter of course, where, under such a contract, the initial carrier has indemnified the shipper or consignee, it has its recourse, by legal subrogation of the latter’s rights, against the succeeding carrier by whose fault the loss has occurred; and yet no one ever supposed that this situation of things presented any feature antagonistic to, or inconsistent with, the said rule of evidence. That situation, we need hardly point out, is identical with that created by this amendment, except that in the one case it is the result of contract and in the other of statute.
In connection with this same amendment Chief Justice White, speaking for the court, in T. & P. R. R. Co. v. Abilene Oil Co., 204 U. S. 437, 27 Sup. Ct. 354, 51 L. Ed. 557, said:
“A statute will not be construed as taking away a common-law right existing at the date of its enactment, unless that result is imperatively required; that is to say, unless it be found that the pre-existing right is so repugnant to the statute that the survival of such right would in effect deprive the subsequent statute of its efficacy; in other words, render its provisions nugatory.”
[2] We find no such inconsistency as this between the said amendment and the said rule of evidence. In fact, we find no inconsistency whatever. The object which Congress had in view in enacting that amendment is said by the court in the case of Railroad Co. v. Riverside Mills, just cited, to have been simply to impose liability upon the initial carrier for the faults of the succeeding carrier, any agreement or stipulation to the contrary notwithstanding. There is absolutely nothing to lead us to suppose that Congress had the further object in view of doing away with the said rule of evidence. *194 Congress was conferring a right of action; it was not dealing with the question of what evidence the courts should deem to be sufficient for the proof of a particular fact at issue between the litigants.
The said rule of evidence has absolutely nothing to do with the substantial rights of the parties. It is simply an aid to the court in weighing the evidence. The plaintiff, having to prove that the loss occurred upon the defendant company’s line, offers evidence going to show that the goods were received in good condition by the initial carrier, and, having made this proof, contends that it establishes the fact that the loss of, or damage to, the goods occurred on the line of the defendant company, and, in support of that contention, invokes this rule of evidence. The question is, we repeat, simply one of the weighing of evidence; and this rule of evidence comes in aid of the court in that task.
This rule of evidence is founded upon logic and human experience.
“Proof of the existence at a particular time of a fact of a continuous nature gives rise to an inference, within logical limits, that it exists at a subsequent time.” 16 Cyc. 1052.
“It is a rule of evidence, founded on the experience of human affairs, that where a state of things is once established by proof, the law presumes that such a state of things continues until the contrary is shown or a different presumption is raised from the nature of the subject in question.” Sanford, V. C., in Bogardus v. Trinity Church, 4 Sandf. Ch. (N. Y.) 744, quoted in Wigmore on Ev. par. 437.
“When the existence of an object, condition, quality, or tendency at a given time is in issue, the prior existence of it is in human experience some indication of its probable persistence or continuance at a later period.” Wig. on Ev. par. 437.
“It is said there is a presumption against change. A given state of affairs being shown to exist, it will be presumed to continue for a reasonable time.” Chamberlayne, Ev. par. 1030.
Another foundation for said rule of evidence, closely akin to the one just stated, is the presumption of regularity.
“There is a general logical probability (i. e., presumption of fact) that things will happen as they usually do; that events, natural, business, social, and the like, will take their normal regular course.” Chamberlayne on Ev. par. 1049.
“An inference of fact, justified by experience, liable to be disproved but nevertheless commonly acted upon with confidence, is to the effect that the customary methods of doing business in general are followed in a particular case which naturally falls within the rule.” Id. 1056.
In due course of business (that is, in the Usual, ordinary, orderly, regular way of conducting business) freight is handled safely, and is transmitted in good condition from one carrier to the other until it reaches the delivering carrier; and inference arises, therefore, though, perhaps, not of the strongest, that, in the particular case the court has to deal with, the freight reached the hands of the delivering carrier in good condition.
Courts have assigned, as still another foundation for said rule, the greater facility with which the carrier may make proof of the condition in which the freight was received. 3 Ann. Cas. 585, note.
By showing that the goods were delivered in bad condition, the consignee establishes prima facie that the damage occurred on the line of the delivering carrier; and the burden of proof shifts to the latter to overthrow that prima facie proof by showing that they were received by it in the same bad condition.
We do not see why Congress should be suspected of having desired to do away with this rule of evidence, thus founded upon logic, human experience, and administrative convenience.
We therefore answer the question in the negative.