## No. 2452

### Second Circuit

### HALL ET. AL. v. H. E. & W. T. RY. CO. ET AL.

(March 14, 1928. Opinion and Decree.)
(June 28, 1928. Rehearing Refused.)
(January 2, 1929. Writ of Certiorari and Review Refused by Supreme Court.)

Parsons and Colvin, of Mansfield, attorneys for plaintiffs, appellees.

Wise, Randolph, Rendall and Freyer, of Shreveport, attorneys for defendants, appellants.

ODOM, J. On October 9, 1923, the plaintiffs purchased from the Ross Brothers Horse & Mule Company at Fort Worth, Texas, twenty-eight head of livestock, consisting of horses and mares. Ross Brothers delivered the stock to the Houston & Texas Central Railway Company, a Texas corporation, for shipment to plaintiff at Keachie, Louisiana. The stock were loaded by said railway company in a 36-foot stock-car late in the afternoon, and that carrier issued to Ross Brothers, the shipper, its through bill of lading, with plaintiffs as consignees, the stock to be delivered to them at Keachie, Louisiana.

The initial carrier transported the car over its line of railroad to Nacogdoches, Texas, and there delivered it to the Houston East & West Texas Railway Company, which carrier in turn hauled the car over its line of road to Logansport, Louisiana, where it was delivered to the Houston & Shreveport Railroad Company, by which the car was delivered to the plaintiffs at Keachie.

The stock, when delivered at Keachie, were in bad condition, some of them being bruised, crippled and scarred, and two of them died.

Plaintiffs brought suit against the Houston East & West Texas Railway Company and the Houston & Shreveport Railroad Company, the terminal or delivering carrier, for $376.00, the alleged damage to the stock.

Plaintiffs, as a cause of action, specifically allege that "through the fault, negligence and carelessness of the defendant companies, their servants, agents and employees in hauling and handling said animals" they were injured and damaged to the amount of $376.00.

Defendants, in answer, admit they handled the stock as connecting and delivering carriers in the capacity of agents for the initial carrier with whom the contract of shipment was made,

"but that the terms and provisions in such contract inured to their benefit and there is specially urged in defense herein section 1, paragraphs A and B and section 2, paragraph C of said contract * * * and defendants allege that whatever damage was so suffered by said shipment was the result of causes set forth in said contract as above referred to, for which defendants are not liable by the terms thereof."

And they further plead, in the alternative, that whatever damage was occasioned to said shipment in route did not occur while the animals were in the custody and possession of defendants or through their negligence or that of their employees but was occasioned prior to the receipt of said shipment by defendants.

There was judgment in the lower court for plaintiffs as prayed for and defendants have appealed.

## OPINION.

There is practically no dispute as to the condition of the animals when delivered at Keachie, Louisiana. Some of them were bruised, scarred and crippled and as a result, two of them died.

Plaintiffs proved to our satisfaction that on account of the injuries to the animals they were damaged to the extent of $376.00, the amount claimed; so that the only question for us to determine is, whether these defendants are liable for that damage.

These defendants were not the initial carriers. The car of live stock was received by the Houston & Texas Central Railway Company at Fort Worth, Texas, which contracted with the shipper to deliver the live stock to plaintiffs at Keachie, Louisiana, as consignees, using the defendants as connecting and delivering carriers.

Plaintiffs do not seek to hold the initial carrier for the loss and damage, but sue the connecting and delivering carriers and, as a cause of action, allege that the injury to the stock was due to the fault, carelessness and negligence of the latter.

As this was an interstate shipment, it is governed by the Carmack amendment to the Interstate Commerce Act. Under that amendment, liability for goods damaged or destroyed is imposed upon the initial carrier, no matter where the loss occurs, and it is well settled that other carriers en route are not primarily liable unless the loss or damage occurred on their lines.

10 Corpus Juris, 544, and authorities cited in notes.

Among them:

Duvall vs. Louisiana Western R. Co., 135 La. 189, 67 South. 104.

Thompson vs. Southern Pacific Co., 122 La. 994, 46 South. 993.

Hudson vs. Railroad Co., 226 Fed. 38.

Houston Railroad Co. vs. Richards, 212 S. W. 208.

Lancaster vs. Smith et al., 226 S. W. 460.

And many other authorities which might be cited.

We do not understand that counsel for plaintiffs contend against this law as recognized by all the courts, and from the fact that they ground their action upon alleged fault and negligence of these defendants in handling the shipment, they concede that unless the record discloses that the injury to the stock occurred while in possession of these defendants and on their lines and through their negligence plaintiffs cannot recover.

We find and hold that the record does not show that these defendants were careless or negligent in the handling of the shipment. To the contrary, the undisputed testimony is that the shipment was carefully and prudently handled by the defendants. They picked up the car at Nacogdoches, Texas, and carried it to Keachie, Louisiana. There was but little switching of cars along the lines and no unusual jarring or bumping such as would cause the animals to be thrown against each other or against the sides of the car or cause them to fall and be trampled upon by each other.

The conductor testified that he examined the car at Nacogdoches and at each other place where the train stopped and that at

each place the animals were all standing and seemed to be in good condition. They were not unloaded anywhere along the line and he had no opportunity to observe them except through the open spaces in the sides of the car; but through these open spaces he could and did observe that they were all standing. He could not and did not testify that the animals were all in good condition and free from bruises or internal injuries when he received the car on defendants' line of road. But his testimony that the animals were all standing when he received the car, that they stood up all along the line, and that the car was carefully handled when in his possession, is positive and not disputed.

Plaintiffs therefore failed to prove either that the defendants were careless and at fault in handling the animals or that they were injured while in their possession.

But counsel say plaintiffs were not required to make that proof, but that they had a right to rely upon the well recognized rule to the effect that freight "received in good order by the initial carrier is presumed to have been received in like good order by the succeeding carrier, and that a delivery of freight by the terminal carrier in damaged condition raises a presumption that the damage occurred on the delivering carrier's line."

The case of Duvall vs. Louisiana Western Railway Company, 135 La. 189, 65 So. 104, recognized the rule that under the Carmack amendment the intermediate or delivering carrier is liable for only such loss or damage as may have occurred on its or their lines; but it was there held that said amendment did not abrogate the rule of evidence "that goods received in good order by the initial carrier are presumed to have been received in like good order by the succeeding carrier and that a delivery by

the terminal carrier in bad order raises a presumption that the injury occurred on the delivering carrier's line."

But that decision was expressly overruled in Henderson vs. K. C. S. Ry. Co., 147 La. 647, 85 So. 625, where the court held that the common law rule above referred to had been abrogated by the Carmack amendment adopted subsequent to the Duvall decision.

The court, in support of its decision, cited Charleston & Western Carolina Ry. Co. vs. Varnville Furniture Co., 237 U. S. 597, 35 Sup. Ct. 715, 59 Law Ed. 1137.

However, since the latter case was decided by the Supreme Court of the United States, that court has had occasion to deal further with the subject, and in the case of Chicago & Northwestern Ry. Co. vs. C. C. Whitnack Produce Co., 258 U. S. 369, 42 Sup. Ct. 328; decided April 10, 1922, that court specifically held that said common law rule was not abrogated by the Carmack amendment. In the latter case, the court said:

"The single question now presented for consideration is whether, since the Carmack amendment (Comp. Stats. secs. 8604a, 8604aa) a presumption arises that the injury occurred on the delivering carrier's line where goods moving in interstate commerce upon a through bill of lading are delivered in bad condition and the evidence shows they were sound when received by the initial carrier but does not affirmatively establish where the loss occurred."

In holding that said common law rule was not abrogated by the Carmack amendment, the court held that there was no conflict between its holding and the ruling in the Charleston, etc., Ry. Co. vs. Varnville Furniture Co., case cited by our court in the Henderson case, supra.

In the Henderson case, supra, our court, referring to the Duvall case, supra, said:

"Since that decision was rendered, however, the Supreme Court of the United States has ruled otherwise."

And it cites the Charleston case.

. Now that the Supreme Court of the United States has held in its latest expression on the point, that the common law rule as to the presumption was not abrogated by the Carmack amendment and has stated that the Charleston case, supra, does not support the contrary view, we take it that the quesion is settled and accord to plaintiff the benefit of the presumption.

In order for plaintiffs to get the benefit of the presumption, it was, of course, incumbent upon plaintiffs to prove that the initial carrier received the animals in good condition. This the plaintiffs failed to do.

Both of the plaintiffs, Hall and Wyatt, testified that they purchased the animals from Ross Brothers at Fort Worth, presumably at their stock pen; that they observed no indications of external injuries; that the animals seemed to be in good conditon. But they did not say that they made a minute inspection of them, and in the very nature of things they could not have done so, because the animals were all western Colorado stock, about half of them being wild and unbroke. Plaintiffs did not see the animals loaded into the car; that is, they do not say they did.

But Mr. F. H. Shaw, live stock inspector for the Western Weighing Inspectors Bureau, did inspect the animals on the loading dock at Fort Worth at the time they were loaded. He says they were wild, unbroke, range stock.

"I saw that they were crowded and the horses were scrambling and falling and one or two got down, and I saw that they were not in condition to go as they were and I went and called Ross Brothers, the shippers, and notified them and they had a man to come and look at them."

He says that the car was overloaded—too many in the car.

Mr. E. J. Ward, connected with Ross Brothers, whose testimony was taken by commission, said he did not see the animals personally and did not see them loaded, but said he saw them and that "there were no noticeable bruises or injuries noticed." He said the animals were shipped from Denver, Colorado, on October 4th, and that "part of them seemed to have been broke or halter broke and others green." He admitted that Mr. Shaw, the inspector, called Ross Brothers and asked them to send a man down and that he went, but he did not say that the conditions found by Shaw as to overcrowding and some of the animals being down in the car did not prevail. Shaw would have had no occasion to call Ross Brothers while the animals were being loaded if the conditions had not been as he stated them.

Shaw's testimony that the animals were wild and unbroke, "scrambled" and ran over each other while being loaded and that some of them got down in the car and that the car was overcrowded, being uncontradicted, must be accepted.

As already stated, that animals had just arrived in Fort Worth from Denver, Colorado. When they arrived at Keachie, they were bruised, cut, one or two had broken bones and one had internal injuries. These are the kinds of injuries they would naturally receive in getting down in the car, running over each over, etc., while being loaded at Fort Worth or from being overcrowded in the car.

Our conclusion is that the plaintiffs have failed to show that the animals were in

good condition when finally received by the terminal carrier.

Our conclusion is, further, that the defendants have proved that the animals were delivered in the same condition in which they were received. This is shown by the uncontradicted testimony of the train conductor, who said that none of them got down in the car on defendants' lines and that there was no bumping or jarring of the cars sufficient to injure them.

The bill of lading under which the stock were shipped contains this sentence:

"Unless caused by the negligence of the carrier, or its employees, no carrier shall be liable for or on account of any injury or death sustained by said live-stock, occasioned by any of the following causes: overloading, crowding one upon another, escaping from cars, pens or vessels, kicking or goring or otherwise injuring themselves or each other."

That stipulation is binding upon plaintiffs.

In Simms & Sons vs. N. O. & N. E. Railroad Co., 122 La. 268, 47 South. 602, it was held that where a carload of mules were shipped under special contract similar to this one and one of the mules was injured in transit in some unexplained way, "the proof that the carrier was not negligent in any respect in handling the car is a sufficient defense."

Under this decision and under the special contract in this case, even if it were shown that plaintiffs' animals were injured while on defendants' lines in some unexplained way, defendants would not be liable in view of defendants' proof that they were not negligent.

The record discloses that the chute through which the animals had to pass

from the car to the stock-pen at Keachie was in bad order and that some of the first animals which went out of the car fell through the floor and that others ran over them as they were being unloaded. Defendants are unquestionably liable for whatever damage, if any, was caused on that account. But there is no proof that the animals were injured in the unloading; but, on the contrary, the testimony of Mr. Hall is to the effect that the animals most seriously injured were the last to get out of the car. They were not the ones which fell through the floor and were run over.

For the reasons assigned, the judgment appealed from is reversed and plaintiffs' demands rejected at their cost.