### SNOWDEN v. TREMONT & G. RY. CO. *
### No. 4122.

Court of Appeal of Louisiana. Second Circuit.

March 16, 1932.

*Rehearing denied May 4, 1932.

R. W. Oglesby, of Winnfield, and Theus, Grisham, Davis & Leigh, of Monroe, for appellant.

Cas Moss, of Winnfield, for appellee.

McGREGOR, J.

In this case the plaintiff sues the defendant railroad for damages alleged to have been done to a carload of used opera chairs shipped from Cincinnati, Ohio, to Winnfield, La., over the Baltimore & Ohio Railroad Company, the initial carrier, the Missouri Pacific Railway Company, a connecting carrier, and the Tremont & Gulf Railroad Company, the delivering carrier and the defendant herein. Plaintiff bought from the Cleveland Wrecking Company in Cincinnati, Ohio, 456 used upholstered opera chairs, and instructed that they be shipped to him at Winnfield, La. A car was secured for the shipment, and the Cleveland Wrecking Company loaded the chairs without knocking them down. From the testimony we gather that the floor of the car was covered with the chairs, placed side by side, as close as possible. A kind of floor was then built on top of this first layer, and it in turn was filled with chairs and then another floor was built, and so on until all the chairs were loaded. The railroad company had nothing to do with the loading, though plaintiff alleges that it accepted the shipment after inspecting and approving the manner of the loading. While 456 chairs were bought and paid for in advance, when the Cleveland Wrecking Company loaded the car it was discovered that only 345 chairs were good enough to ship. The suit was filed on the basis of 456 chairs, but subsequently, after the filing of this suit, the Cleveland Wrecking Company reimbursed the plaintiff for the shortage of 111 chairs.

When the shipment arrived in Winnfield, La., over the Tremont & Gulf Railroad Company, and the car was opened and unloaded, it was discovered that quite a large number of the chairs were broken and the upholstery torn. Negotiations were entered into with the railroad company for the purpose of adjusting the damage, but no agreement was reached. As a consequence, this suit was filed for the price of the entire shipment and the freight and all expenses attached thereto. Upon trial there was judgment in the lower court in favor of the plaintiff as prayed for, less $111 for the chairs that were not

shipped. From this judgment the defendant has appealed.

The allegations of plaintiff's petition on which he bases his demand for damages are: (1) That the initial carrier inspected the shipment and approved of the manner in which it was loaded; (2) that the initial carrier obligated itself to deliver the shipment undamaged and in the same condition in which it was when loaded; (3) that after the shipment had arrived at its destination, Winnfield, La., at the depot of the delivering carrier, the Tremont & Gulf Railroad Company, and the car had been opened, it was found that the chairs were so damaged in shipment as to be unfit for use; (4) that the damage was due to the negligence and carelessness of the defendant in handling the car roughly in transit.

Nowhere in the petition is it alleged that the chairs were in good condition when they were shipped, nor that they were properly loaded.

In its answer the defendant denies that the initial carrier inspected the shipment or approved of the manner in which it was loaded. It specially alleges that the chairs were secondhand, and, because of their having been loaded by the shipper, they were transported at a low freight rate, much lower than would have been charged if the carrier had guaranteed the crating, loading, quantity, or condition of the shipment. It is alleged that, because of the fact that the shipper loaded the chairs, it was specially relieved from all responsibility for weight, quantity, and condition, and that this fact was indicated on the bill of lading by stamping the same thereon. All allegations of negligence and rough handling are, of course, denied.

The bill of lading which accompanied the shipment and which the plaintiff introduced in evidence, states that the chairs were "in good order except as noted. (Contents and condition of contents of package unknown)." On the face of the bill of lading there is stamped the following statement: "Loaded by shipper. The Baltimore & Ohio Railway Company not responsible for weights, quantities or condition of property." On the back of the bill of lading there are certain terms and conditions which are binding and form a part of the contract between the shipper and the carrier. Among these provisions are the following:

"(a) The carrier or party in possession of any of the property herein described shall be liable as at common law for any loss thereof or damage thereto, except as hereinafter provided."

"(b) No carrier or party in possession of all or any of the property herein described shall be liable for any loss thereof or damage thereto or delay caused by the act of God, the public enemy, the authorities of the law *or the act or default of the shipper or owner*." (Italics ours.)

■■ The law governing such cases as the one under consideration is stated in section 1348, Vol. 3, Hutchinson on Carriers (3d Ed.), as follows:

"A connecting carrier who has completed the transportation and delivered the goods to the consignee in a damaged condition or deficient in quantity will be held liable in an action for the damage or deficiency, without proof that it was occasioned by his fault, unless he can show that he received them in the condition in which he had delivered them. The condition and quantity of the goods when they were delivered to the first of the connecting carriers being shown, the presumption will arise that they continued in that condition down to the time of their delivery to the carrier completing the transportation and making the delivery to the consignee, and that the injury or loss occurred while they were in his possession."

This expression of the law has been accepted and approved by the courts of this state and is well established in our jurisprudence, as will be seen from an examination of the following authorities: Duvall v. La. Western R. Co., 135 La. 189, 65 So. 104; Henderson v. Kansas City So. R. Co., 147 La. 647, 85 So. 625; Hall et al. v. Houston E. & W. Texas R. Co. et al., 9 La. App. 577, 121 So. 769, citing Chicago & N. W. R. Co. v. C. C. Whitnack Produce Co., 258 U. S. 369, 42 S. Ct. 328, 66 L. Ed. 665.

■ Acts of this kind are ex contractu, and it is not necessary for the plaintiff to allege negligence of any kind. Primarily, all that is necessary to be alleged is: (1) That the initial carrier received the shipment in good condition; (2) that the shipment was delivered in a damaged condition; (3) the amount of the loss sustained because of the damaged condition of the shipment.

■ It is not necessary to allege or prove that the shipment was received by the delivering carrier in a good condition. That is a presumption of law if the initial carrier received it in good condition. But this presumption is rebuttable. There is also a rebuttable presumption of law that, when goods are delivered in a damaged condition, the injury was received while the goods were being transported by the delivering carrier.

■ As we have already intimated above, there is no allegation in plaintiff's petition to the effect that the chairs involved in this suit were in good condition when they were shipped. Unless, therefore, the pleadings have been enlarged by evidence on this point, the legal presumption that the chairs were delivered to the defendant in good condition necessarily cannot be relied upon. The only testimony offered on this point was that of

S. G. Rose, vice president and general manager of the shipper, taken by commission. His testimony was objected to at the trial on the ground that it was hearsay and that he had no personal knowledge of the condition of the chairs when they were placed in the car, nor of the manner of the loading and packing. On cross-examination Mr. Rose testified in part as follows:

"Q. What connection did you have with the crating and loading of the shipment of opera chairs? If you say you did not supervise the actual loading, give the name or names of parties who did. A. I issued instructions as to the exact method to be followed in the loading of these chairs,—this work having been supervised by E. D. Fingerhut, a foreman in my employ.

"Q. As vice-president of the Cleveland Wrecking Company, is it not a fact that you had nothing whatever to do with the actual loading of the car in question, and that the actual loading was done by subordinates? A. It is a fact. Loading was made by subordinates."

Under these two questions and answers, the irresistible conclusion is that this witness is utterly incompetent to testify as to the condition of the chairs when they went into the car, the way and manner in which they were loaded, and as to an agent of the initial carrier having inspected the shipment and approved of the manner of loading. Anything that he might say on these subjects is bound to be hearsay, pure and simple. Plaintiff's entire case hinges upon the presumption that the chairs were delivered to the defendant in good condition and that the damage was done by the defendant while transporting them. While these presumptions are founded upon sound principles and are just, yet, at the same time, they are harsh. And since they are harsh, whenever a plaintiff seeks to rely upon them he must bring himself strictly within the law by alleging and proving, as a condition precedent, that the shipment was delivered to the initial carrier in a good condition. He must make this proof direct and conclusive. Hearsay testimony is wholly inadmissible, and that is the only kind that was even attempted to be introduced in this case.

As corroborating defendant's contention that no inspection or approval of the manner of loading these chairs was made by any one for the initial carrier, on the bill of lading introduced by the plaintiff himself there is stamped the following: "Loaded by shipper. The Baltimore & Ohio Railroad Company not responsible for weights, quantity or condition of property." The very fact that that statement was stamped upon the bill of lading negatives any idea of inspection. Certainly, under that statement placed upon the bill of lading, the initial carrier declares to the world that it does not admit or guarantee that the chairs were in good condition or loaded properly. If this were not true, it would be a meaningless and useless act.

We could rest the case upon the finding that the plaintiff has neither alleged nor proved the important condition precedent, viz.: That the goods were delivered to the initial carrier in good condition. But there are other equally important features of the case which should be discussed.

In cases of this kind it is not necessary for the plaintiff to allege any negligence on the part of the delivering carrier. This is a claim ex contractu, and therefore it is sufficient to allege that the shipment was delivered to the initial carrier in good condition and that it arrived at its destination in a damaged condition. But in some cases it is found that the plaintiff seems to think it necessary to allege specific negligence on the part of the delivering carrier, so in the present case the plaintiff appears to have thought it at least beneficial, if not necessary, to allege specifically that the cause of the delivery of the opera chairs in a damaged condition was the negligence of the delivering carrier manifested in the form of rough handling of the car in which they were loaded. There is some considerable authority for holding that, where a plaintiff alleges specific acts of negligence on the part of the delivering carrier, he waives the common-law presumption in his favor and assumes the burden of proving his special allegations of negligence. In the case of Yontz v. Missouri Pacific Ry. Co., 174 Mo. App. 482, 160 S. W. 832, the Kansas City Court of Appeals said:

"Ordinarily when inanimate merchandise is shipped with a carrier in a good condition and it arrives at destination for delivery in a damaged condition, it is for the carrier to account for the condition in some way that will excuse him from his obligation to safely deliver. Potts v. W., St. L. & P. Ry. Co., 17 Mo. App. 394; Buddy v. W., St. L. & P. Ry. Co., 20 Mo. App. 206; Merritt Creamery Co. v. Ry. Co., 128 Mo. App. 420, 107 S. W. 462. And the shipper's case is made prima facie if he shows good condition when delivered at point of shipment and bad condition when received at destination, and the onus is on the carrier to excuse himself. Read v. Railway Co., 60 Mo. 199; Witting v. Railway Co., 101 Mo. 631, 14 S. W. 743, 10 L. R. A. 602, 20 Am. St. Rep. 636.

"But, if the complaining party chooses to specify the negligence, he puts aside the presumption in his favor and assumes the burden of proving his specification. The rule making a prima facie case for the shipper when he shows injury or nondelivery and putting the burden on the defendant to relieve himself has arisen from necessity and natural justice. Hill v. Sturgeon, 28 Mo. 323. If the

carrier receives and fails to deliver at destination or delivers in an injured condition, he knows the cause, and the shipper ordinarily has no means of knowing it, and for that reason the presumption has arisen in favor of the shipper which, in the absence of legal explanation or contractual excuse, entitles him to judgment for damages. But, if the shipper alleges that he knows the particular cause and alleges it, he does not need the aid of a presumption, and he must therefore prove his allegations as in other cases."

In the above case no contract was pleaded, though in argument before the appellate court the plaintiff attempted to rely upon the common-law presumption as though it had been pleaded. In the case at bar, the plaintiff did allege upon the contract without specifically alleging that the chairs were loaded in good condition. He alleges that the "carriers obligated to deliver the shipment of chairs to petitioner undamaged and in the same condition in which they were at the time of acceptance of the shipment." He then alleges that when the car was opened it was found that the chairs were damaged so that they were not fit for the use and purpose for which they were purchased. Further on in his petition he alleges that this condition was "due to the car having been so roughly handled in transit as to cause the opera chairs to be broken, damaged, and so roughly handled as to be broken loose from the cratings, thereby causing the leatherette upholstery to be torn, ripped, gouged and marred, and the metal frames of said chairs to be broken, thereby making the entire shipment unfit for use and utterly unacceptable to petitioner." It is then alleged "that all the injury, loss and damage sustained by the petitioner is due to the negligence and carelessness of defendant in handling said shipment as above set forth."

Plaintiff has therefore specially alleged that all the damage done to the chairs in question was due to the negligence and carelessness of defendant, and that that negligence consisted of rough handling of the car in which the chairs were shipped. It is held in some cases that this kind of pleading is mere surplusage and that in spite of it the plaintiff can rest upon the presumption of the common law in his favor. But under all laws of pleading it would seem that the plaintiff should be required to prove every allegation of his petition. The authorities, however, are divided on this question. 10 C. J., Carriers, 579:

"Ordinarily, if the liability of a carrier for loss or injury is that of an insurer, no proof of negligence is necessary, *although it has been held that where the complaint alleges that the loss or injury occurred through specific acts of negligence on the part of the carrier, the burden is on the plaintiff to prove it.*" (Italics ours.)

In the Yontz v. Missouri Pacific Ry. Case, cited above, it was said:

"If the carrier receives and fails to deliver at destination or delivers in an injured condition, he knows the cause, and the shipper ordinarily has no means of knowing it, and for that reason the presumption has arisen in favor of the shipper which, in the absence of legal explanation or contractual excuse, entitles him to judgment for damages. *But, if the shipper alleges that he knows the particular cause and alleges it, he does not need the aid of a presumption, and he must therefore prove his allegations as in other cases.*" (Italics ours.)

We see no flaw in this argument, and, applied to the case under consideration, it means this: Plaintiff alleges that he knows and alleges that all the damage and injury done to these opera chairs occurred on defendant's road; that it was due to the carelessness and negligence of the defendant alone; and that this carelessness and negligence consisted of handling the shipment in such a rough manner that the chairs were broken loose from the crating. Having stated the case thus, the burden of proof must be on the plaintiff. But if by any process of reasoning it should be held that the plaintiff does not lose the common-law presumption in his favor by pleading specific negligence in this manner, certainly it must be admitted that the defendant can exculpate itself from all blame for the injury merely by refuting the specific acts of alleged negligence.

On the question of the negligence and carelessness of the defendant in the handling of the car containing the opera chairs, the plaintiff offered no testimony, whatever. In the case cited above, the court said:

"Plaintiff seems to have tried his case as though he had not pleaded the specific negligence which caused his loss. His evidence and instructions are of that indefinite nature as to show that he is relying on the presumption of which we have spoken."

The plaintiff in this case having offered no testimony in support of his allegation of carelessness and negligence and rough handling, the defendant could have rested its case without offering any testimony on the subject. But it was not content to rest its case thus, and, in order either to *refute* the *specific* charge of *negligence* or to *rebut the common-law presumption* against it, several witnesses were produced who testified concerning the handling of these chairs. The shipment was transported twenty-three miles over defendant's railroad. The car was received by defendant at Rochelle at 3:30 o'clock p. m., and was delivered by it at its destination in Winnfield at 5:20 o'clock p. m., the same day. Four stops were made during the trip. The conductor of the train traced the car minutely through every move-

ment from the beginning of the trip to the end. The car was uncoupled only once. According to the testimony of the conductor and the engineer who handled the train, there was no rough handling of the car. Under any theory of the case, if there was no rough handling of the car, the injury would and could not occur on defendant's railroad.

If plaintiff is held to have waived his right to the common-law presumption, he has failed to sustain his allegation of negligence, and not only has he failed to sustain it, but the defendant has successfully refuted it. On the other hand, if the plaintiff still has a right to rely on the common-law presumption in his favor, we think the defendant has successfully rebutted it. There are two ways by which the defendant has a right to rebut this presumption. It might have examined the condition of the car at the time it received it. If the chairs had then been found to be in a damaged condition, the presumption that they were delivered to it in a good condition would have been definitely destroyed. But this method is rarely resorted to, especially in cases of closed cars where there is no suspicion of the contents being in a damaged condition. Or the defendant can rebut the presumption by showing by proper testimony that during the time the shipment was in its possession nothing occurred that would likely cause the damage.

In the case of Duvall v. Louisiana Western Ry. Co., 136 La. 526, 67 So. 354, 355, the plaintiff sued the delivering carrier for injuries received by a shipment of live stock. Defendant showed that, notwithstanding the fact that the animals were delivered in a damaged condition, nothing occurred while they were being transported by it over its line which could have caused the injuries. On the basis of this proof, the Court of Appeal of the First Circuit rejected the demand of the plaintiff. The case was reviewed by the Supreme Court on certiorari, and, in sustaining the Court of Appeal, in its opinion said:

"It was proven that the animals were watered, fed, and rested at Houston, Tex., before delivery to the defendant, which safely transported and delivered them at Crowley about one hour and a half behind schedule time.

"The only damages claimed are for delay in transportation and want of proper attention to the animals.

"This brief delay could not have appreciably affected the condition of the animals. The plaintiff might have sued the initial carrier, and recovered on the facts disclosed by the record."

In the case at bar, the defendant has certainly rebutted the common-law presumption as completely as did the defendant in the above case. As was said by the court in that case, under the proven state of facts if the chairs were delivered in a good condition in the beginning to the initial carrier, the plaintiff might have secured judgment against the initial carrier, whom he had a right to sue.

Hall et al. v. Houston E. & W. Texas Ry. Co. et al., 9 La. App. 577, 121 So. 769. In this case plaintiffs sued the delivering carrier on account of injuries received by a shipment of horses. The damaged condition was satisfactorily proved. The lower court gave judgment for the plaintiffs, but this was reversed on appeal to this court. In arriving at the conclusion that the defendant was not liable, this court based its opinion upon the finding that the defendant had successfully shown by its agents and employees who handled the shipment that at no time was there any fault or negligence on its part. It was definitely held that the shipment was carefully and prudently handled by the defendant. The character of the testimony on which this finding was based was very similar to that produced by the defendant in the case at bar. It is true that the law presumes that these chairs were delivered to the defendant in good condition (provided always that plaintiff's allegations can be construed to mean that they were delivered in good condition to the initial carrier, and provided further that they were in fact so delivered). But the plaintiff has specifically alleged that whatever injury they received was on the road of the defendant and caused by negligence in the form of rough handling of the car in which the chairs were loaded. As was done in the Duvall Case, above, this presumption was rebutted by testimony that the car received no rough handling.

■ In addition to denying liability for any injury done to this shipment of chairs on account of not being guilty of any rough handling, carelessness, or negligence while they were in its possession, the defendant alleged that the chairs were loaded by the shipper, that the initial carrier did not inspect the shipment and did not guarantee the weight, number, or condition of the property, and that a statement to this effect was stamped on the original bill of lading. The chairs were all shipped wholly set up. They were placed side by side and attached in some manner to the floor of the car. The best description of how they were loaded is contained in the plaintiff's testimony, which is as follows:

"They set in a row of seats length ways of the car with the backs to the wall. The seats were nailed to the floor one nail in the front and one in the back, the arms were wrapped with excelsior and burlap and tied on the arm. On the back of the arm was a four by four running the entire length of the car. Then that was braced up from the floor with a three by five or a four by six and then there was a rough one by six running the length of the car on that and on top of that was a three by six or four by six going cross ways of the car and there there was the old style one by

twelve for flooring for that. There were three tiers and each tier was fixed the same way. There was more lumber than anything else. I know I made some objection there to Mr. DeLoach about the amount of the freight and come to find. out there was enough lumber there to build that little depot."

According to other testimony of the plaintiff, it is the usual custom in shipping opera chairs to knock them down and crate all similar parts separately. It is easy to see that this would be the best and safest way. But plaintiff himself instructed the shipper to load the chairs in the manner in which he did in order to save lumber and freight charges. He testified that even as it was there was enough lumber in the shipment to build the defendant's depot at Winnfield. In testifying about the manner in which the chairs were loaded, R. L. Bailey, a witness for the plaintiff, who was to be the ultimate purchaser of the chairs, said:

"They should have been knocked down and crated; that is the way I would have shipped them, but they were put in there like they came out of the theater."

It would seem that any one with ordinary judgment ought to have easily known that those chairs would not and could not stand the hardships of a trip as a part of a freight train from Cincinnati to Winnfield, La. Only one nail at the back of each chair and one at the front were expected to hold them against the strain to which it was bound to have been known they would be subjected. And in addition to that, there were two or three heavy floors of lumber built above the first tier. This weight alone was enough to crush them. In our opinion, the irresistible conclusion is that the breakage of these chairs is attributable solely to the manner in which they were loaded. This being true, the shipper must bear the blame, especially in view of the fact that the initial carrier disclaimed responsibility by stamping it on the face of the bill of lading. There are any number of authorities to support this holding.

The initial carrier, so far as the evidence discloses, never inspected the manner of the loading of this car. All it did was to issue the bill of lading at the request of the shipper. It is true that the vice president and general manager testified that an agent of the initial carrier inspected the loading several times as it progressed, but he was testifying wholly from hearsay, and the testimony cannot be considered.

In 4 R. C. L., on page 733, under the subject of Carriers, is found the following concise statement of the law on this subject:

"When a shipper assumes the responsibility of loading a car and seeing that it is properly prepared for the transportation of the particular article which he is loading, the general rule seems to be that he assumes responsibility for all defects in package and loading which are necessarily invisible to the agent of the carrier who accepts the freight, or which he cannot discern by ordinary observation, or such inspection as he can readily make. If however the improper loading is apparent, that is, is a fact which addresses itself to the ordinary observation of the carrier's servants, the carrier will be liable notwithstanding the negligence of, or imputable to, the shipper. But if goods are transported in closed cars, so that when received from one carrier by another the latter cannot, without opening the doors, see the condition of their contents, it seems that it is under no duty to open such doors, and is not answerable for a loss or injury to the goods resulting solely from their condition, and not from any fault of the carrier. And there is some authority for the proposition that if a shipper himself packs and secures goods on a car, but does it so insufficiently that they break from their fastenings and are damaged without the fault of the carrier, the latter is not liable, although its servants knew that the goods were insecurely fastened before starting."

The law on this point is also clearly stated in 10 C. J., Carriers, 145:

"One of the exceptions to the carrier's common-law liability arises in cases where the injuries are due to the improper packing of the goods by the shipper. Many decisions apparently hold without qualification that the full duty of the carrier is simply to carry goods in the condition in which they are offered, and that, where goods tendered are insufficiently packed, the carrier is not liable for loss or injury due to such defect, whether the defect in the packing is latent or not. This principle would seem to be especially applicable where the shipper failed to comply with a rule of the interstate commerce commission prescribing the method for packing goods of the character which were destroyed. However, the foregoing view has not met with universal approval, and a number of decisions hold that the carrier, being entitled to reject defectively packed goods tendered for shipment, if it accepts for transportation goods which it knows are defectively packed, or which by the exercise of reasonable care it could have observed were defectively packed, it assumes to carry the goods as they are, and its common-law liability as carrier attaches, and it is subject to all the liabilities usually attaching to an ordinary shipment of the same character. But even where this view prevails, it cannot be said that the carrier must, at his peril, know that the goods are not in fact safely packed. The shipper usually knows better than the carrier the manner in which the goods have been packed and the manner in which they should be packed, and even though the carrier may have knowledge of some defect in the packing, still if it is not apparent to the ordinary observation of the

carrier or his servants that the goods cannot be safely carried in the condition in which they are presented, the carrier should not be held to take the chances of injury from improper packing."

Ross v. Troy & Boston Railway Co., 49 Vt. 364, 24 Am. Rep. 144. In this case a piece of machinery was injured in transit due to the insecure fastening and insufficient packing. In holding the defendant carrier not liable, the court said:

"It seems incongruous for the plaintiff to claim that the defendant should overjudge him in a matter in which he assumed to judge and to do all that he required or supposed necessary to be done in the premises, and that the defendant should be responsible for the inadequacy of what the plaintiff adjudged and did."

In the case of Hines v. Buchanan, 131 Va. 88, 109 S. E. 219, the subject of the liability of a carrier for injury to a shipment, due to faulty packing or loading, was exhaustively reviewed. In reversing the judgment of the lower court and in holding the carrier not liable the Supreme Court of Appeals of Virginia justified its finding by the fact that in its opinion the testimony showed clearly that *nothing happened en route to cause injury to a properly packed car, and that the injury was found to be due to negligence in the manner of loading and packing.* So in the case at bar we find that nothing happened en route on defendant's railroad sufficient to cause injury to properly loaded opera chairs, and, since the evidence convinces us that they were improperly loaded and insufficiently secured in the car, the injury was due to this fact and the defendant is not liable.

There are many authorities supporting the holding that carriers are not liable for injuries which are due to insufficient packing and improper loading on the part of the shippers. Among these are the following: Texas & Pacific Ry. Co. v. Klepper (Tex. Civ. App.) 24 S. W. 567; Texas & Pacific Ry. Co. v. Edins, 36 Tex. Civ. App. 639, 83 S. W. 253; Houston & T. C. Ry. Co. v. Davis, 45 Tex. Civ. App. 212, 100 S. W. 1013; People's Saving Bank of Saginaw v. Pere Marquette Ry. Co., 235 Mich. 399, 209 N. W. 182; St. Louis-San Francisco Ry. Co. v. Glow Electric Co., 35 Ohio App. 291, 172 N. E. 425.

Summarizing, we hold:

(1) The plaintiff did not allege or prove that the chairs were received by the initial carrier in good condition.

(2) The plaintiff alleged specific negligence and failed to prove it.

(3) The defendant refuted the negligence charged by the plaintiff, and, if it should be held that the plaintiff properly alleged and proved that the chairs were delivered to the initial carrier in good condition, the defendant has satisfactorily rebutted the common-law presumption that they were delivered to it in the same condition by showing that nothing occurred on its railroad while the chairs were in its possession that could have caused the injury complained of.

(4) The defendant satisfactorily showed that the injury was due to the fault of the shipper because of the insecure and improper manner in which the chairs were loaded, and that the initial carrier specially disclaimed any liability on this account.

In view of the conclusions that we have reached, it becomes unnecessary to examine or discuss the nature or extent of the injury received by the chairs. The judgment appealed from is wrong and will have to be reversed.

For the reasons assigned, it is hereby ordered, adjudged, and decreed that the judgment of the lower Court be, and the same is, hereby annulled and set aside, and that there be judgment herein in favor of the defendant, rejecting the plaintiff's demand and dismissing his suit; all costs of both courts to be paid by the plaintiff and appellee.

DREW, J., dissents from the majority opinion of the court in rejecting the testimony of the witness, S. G. Rose, vice president and general manager of the shipper, and therefore dissents from the finding of facts and the conclusions of law reached by the majority of this court.